682 So.2d 1327 (1996)
Donald PATTERSON
v.
Raymond LONG.
No. 96 CA 0191.
Court of Appeal of Louisiana, First Circuit.
November 8, 1996.
*1329 Raymond Charles Vinet, Sr., Baton Rouge, for Plaintiff/Appellee, Donald Patterson.
Paul D. Buffone, Baton Rouge, for Defendant/Appellant, Raymond Long.
Before CARTER, GONZALES and PARRO, JJ.
CARTER, Judge.
This is an appeal from a decision by a hearing officer in a workers' compensation case.

FACTS
On May 28, 1993, plaintiff, Donald Ray Patterson, was injured during the course and scope of his employment as a ranch hand for Raymond Long (Long). While castrating bull calves, plaintiff was thrown against an iron fence, sustaining injuries to his back, neck, shoulder, and arm. On May 31, 1993, plaintiff reported the accident to Long, who instructed plaintiff to seek medical attention. On June 1, 1993, plaintiff consulted Dr. Connie Bryant, a chiropractor, who treated plaintiff and determined that he was disabled through September 13, 1993.
At the time of plaintiff's accident, Long's workers' compensation insurer was Louisiana Workers' Compensation Corporation (LWCC). From June 1, 1993, through September 8, 1993, LWCC paid plaintiff weekly benefits of $230.50. Plaintiff was evaluated and treated by various physicians. Surgery was ultimately recommended, but authorization was denied by LWCC. Plaintiff never returned to work after the accident.
On February 14, 1994, plaintiff filed with the Office of Workers' Compensation a "Disputed Claim for Compensation" (1008 Form), contending that he suffered a continuing disability. However, Long and LWCC (the defendants) *1330 contended that plaintiff had fully recovered and that plaintiff forfeited his rights to any benefits by willfully making false statements and/or representations for the purpose of obtaining workers' compensation benefits and medical treatment.
On February 14, 1995, trial was held. The parties stipulated to the following: (1) plaintiff was employed by Long on May 28, 1993; (2) plaintiff suffered an injury arising out of the course and scope of his employment on that day; (3) LWCC paid plaintiff weekly benefits of $230.50 from June 1, 1993, through September 8, 1993; (4) plaintiff's average weekly wage was $345.75; and (5) Long's workers' compensation insurer was LWCC. After hearing plaintiff's testimony, the hearing officer continued the trial. On June 7, 1995, the trial resumed. At the conclusion of the trial, the hearing officer took the matter under advisement. On August 28, 1995, the hearing officer rendered her decision, making the following determinations:
1. Claimant remains temporarily, totally disabled and is entitled to back-due benefits from September 9, 1993, through the present.
2. Defendants shall authorize surgery as recommended by Dr. Williams.
3. Defendants shall pay the balance of Dr. Connie Bryant's bill per the fee schedule.
4. Defendants were arbitrary and capricious in failing to pay the balance of Dr. Bryant's bill. Claimant is awarded $1,000.00 in penalties and $1,000.00 in attorney's fees.
5. The remainder of the claim was reasonably controverted and further claims for penalties and attorney's fees are denied.
6. Defendants are assessed with all costs of these proceedings, including but not limited to all costs and fees for doctors' depositions.
7. Defendants' motion for a dismissal per LSA-R.S. 23:1208 is denied.
The defendants appealed from the decision, assigning the following specifications of error:
1. The hearing officer committed manifest error in ordering the defendants to authorize surgery for which there existed no objective medical indication.
2. The hearing officer committed manifest error in finding the plaintiff to be temporarily and totally disabled from September 9, 1993, through the present.
3. The hearing officer committed manifest error in finding the defendants acted arbitrarily and capriciously in denying payment for the portion of Dr. Bryant's treatment for which Dr. Bryant had not obtained pre-certification.
Plaintiff answered the appeal, requesting additional attorney's fees on appeal.

TEMPORARY TOTAL DISABILITY
The defendants contend that the hearing officer erred in determining that plaintiff was temporarily totally disabled after September 8, 1993.
Pursuant to LSA-R.S. 23:1221(1)(c), a claimant has the burden of proving his temporary total disability by clear and convincing evidence.[1]Penn v. Wal-Mart Stores, Inc., 93-1262 p. 3 (La.App. 3rd Cir. 6/15/94); 638 So.2d 1123, 1126, writ denied, 94-1835 (La.10/28/94); 644 So.2d 651; Polk v. Babineaux's Plumbing, Inc., 628 So.2d 71, 74 (La.App. 3rd Cir.1993). In the absence of clear and convincing evidence that the employee *1331 is physically unable to engage in any employment, the claimant's demand for temporary total disability benefits must fail. Tanner v. International Maintenance Corporation, 602 So.2d 1133, 1137 (La.App. 1st Cir.1992).
The issue of disability within the framework of the workers' compensation law is a legal rather than a purely medical determination. Pollock v. Louisiana Insurance Guaranty Association, 587 So.2d 823, 825 (La.App. 3rd Cir.1991). The issue of disability is determined with reference to the totality of the evidence, including both lay and medical testimony. Taylor v. Louisiana-Pacific Corporation, 602 So.2d 48, 51 (La.App. 3rd Cir.), writs denied, 606 So.2d 541 and 542 (La.1992). The hearing officer is afforded great latitude in making credibility determinations and in weighing testimony. Harris v. Bronco Construction Company, 93-2139 p. 4 (La.App. 1st Cir. 10/7/94); 644 So.2d 805, 807, writ denied, 94-2740 (La.1/6/95); 648 So.2d 931. The determination of an expert's credibility is a factual question subject to the manifest error/clearly wrong standard of review. Martin v. East Jefferson General Hospital, 582 So.2d 1272, 1277 (La.1991); Harris v. Bronco Construction Company, 644 So.2d at 807; Cheramie v. Horst, 93-1168 p. 5 (La.App. 1st Cir. 5/20/94); 637 So.2d 720, 723. Moreover, after weighing and evaluating all of the evidence, the fact finder is free to accept or reject the opinions expressed by the experts. Harris v. Bronco Construction Company, 644 So.2d at 807; Hoyt v. State Farm Mutual Automobile Insurance Company, 623 So.2d 651, 659 (La. App. 1st Cir.), writ denied, 629 So.2d 1179 (La.1993).
The question of whether the claimant is entitled to temporary total disability benefits is ultimately a question of fact, and the trial court's resolution of that issue may not be disturbed by the appellate court in the absence of manifest error or unless clearly wrong. Polk v. Babineaux's Plumbing, Inc., 628 So.2d at 74; Taylor v. Louisiana-Pacific Corporation, 602 So.2d at 51. Reasonable evaluations of credibility and reasonable inferences of fact will not be disturbed even though the appellate court may feel that its own evaluations and inferences are as reasonable. Shelton v. Wall, 614 So.2d 828, 832 (La.App. 2nd Cir.1993). When the trier of fact's findings are reasonable in light of the entire record, an appellate court may not reverse a choice between two permissible views of the evidence. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882-83 (La. 1993); Shelton v. Wall, 614 So.2d at 832. The issue to be resolved by the appellate court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one in view of the record in its entirety. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882-83; Harris v. Bronco Construction Company, 644 So.2d at 807.
Plaintiff testified that he was injured on May 28, 1993, while working as a ranch hand for Long. Plaintiff, along with three other men, was castrating bull calves when he was thrown against an iron fence, injuring his back, neck, shoulder, and arm. On May 31, 1993, plaintiff reported the accident to Long, who instructed plaintiff to seek medical attention. Plaintiff indicated that he saw Dr. Connie Bryant, a chiropractor, initially.
Plaintiff testified that, since the May 28, 1993, accident, he has been unable to perform any type of physical labor, to lift excessive weight, to walk long distances, to sit for prolonged periods, or to physically involve himself with his family. Plaintiff indicated that the period following the work-related accident has been mentally taxing. According to plaintiff, he enrolled at Jumonville Memorial Technical Institute and attended classes from 7:30 a.m. until 3:30 p.m., Monday through Thursday, for approximately fourteen days, but was unable to continue due to the pain he experienced from sitting for such long periods.
Plaintiff's wife, Janet, testified that, since the accident, plaintiff has been unable to assist with household chores or repairs. She indicated that plaintiff had enrolled in vocational-technical school, but he was forced to quit due to the extreme back pain caused by sitting for long periods of time.
*1332 Dr. Bryant's medical records reveal that plaintiff first consulted her on June 1, 1993. She had x-rays taken of plaintiff's spine, right wrist, and left shoulder, which revealed deviations from the normal structure. Dr. Bryant performed orthopedic, neurological, and chiropractic tests, noting palpable cervical and lumbar muscle spasms and thoracic tenderness. She recommended that plaintiff undergo twelve to sixteen weeks of conservative chiropractic care.
Dr. Bryant received a letter from LWCC, dated August 12, 1993, requesting information regarding plaintiff's disability, maximum medical improvement, and return to work. On October 25, 1993, Dr. Bryant responded to LWCC's letter, indicating that (1) plaintiff was disabled from June 1, 1993, through September 13, 1993; (2) due, to the traumatic nature of injury and recurring symptoms, plaintiff would most likely have future episodes of stiffness and soreness as a result of the accident; (3) plaintiff suffered no permanent injuries; and (4) she would recommend that plaintiff change his occupation because of the injuries he received. Dr. Bryant diagnosed plaintiff with cervical strain/sprain, cervical neuralgia, headache syndrome, lumbar strain/sprain, lumbosacral radiculitis, lumbar myofascitis, muscle spasm, thoracic myofascitis, and radiculitis in the shoulder area.
On July 7, 1993, plaintiff was examined by Dr. J. Thomas Kilroy, an orthopedic surgeon, at the request of LWCC. Dr. Kilroy testified, via deposition, that plaintiff had complaints of low back and neck soreness, as well as stomach and bladder problems. Dr. Kilroy performed a physical examination of plaintiff's cervical and lumbar spine, both of which revealed normal results. Dr. Kilroy's examination produced no objective findings, and he diagnosed plaintiff with resolving lumbar and cervical strain. Dr. Kilroy felt that plaintiff was capable of returning to work without restrictions within one month of his July 7, 1993, examination of plaintiff.
On August 2, 1993, plaintiff consulted Dr. Alan C. Farries, an orthopedic surgeon. Dr. Farries testified, via deposition, that his examination of plaintiff revealed no objective findings. Plaintiff's neurological examination and x-rays were normal. Dr. Farries opined that plaintiff suffered from very mild cervical and lumbar strains.
Dr. Farries next saw plaintiff on September 1, 1993, at which time plaintiff's examination was basically unchanged from the previous visit. However, for the sake of completeness, Dr. Farries ordered that plaintiff undergo a bone scan. Dr. Farries reviewed the results of the bone scan and found them to be normal. However, Dr. Farries noted that the scan showed some mild cervical arthrosis in one level, but he stated that it did "not mean much." Dr. Farries also noted that there was a circumferential bulging disc in the lumbar spine, but that neither finding was a significant pathological problem. Additionally, Dr. Farries indicated that neither finding was the cause of plaintiff's symptoms.
On September 8, 1993, Dr. Farries saw plaintiff for the last time. Dr. Farries found no significant orthopedic problems and advised plaintiff to return to work without any restrictions.
Thereafter, plaintiff began seeing Dr. Robert J. Hall, a general practitioner, who treated him from September 13, 1993, through December 2, 1993. Dr. Hall ordered that plaintiff undergo lumbar and cervical CT-scans. On October 22, 1993, the CT-scans were performed, and Dr. Hall subsequently referred plaintiff to Dr. Warren Williams, a neurosurgeon.
Dr. Williams testified, via deposition, that he first saw plaintiff on December 6, 1993, at which time he performed neurological and spinal examinations, which revealed no objective findings. Dr. Williams felt that a conservative diagnosis of lumbar sprain was appropriate.
On January 6, 1994, Dr. Williams' examination of plaintiff was normal, and he felt that, after six weeks of physical therapy, plaintiff would reach maximum medical improvement and be capable of returning to his employment.
On February 18, 1994, plaintiff complained of upper and lower back pain, but his examination results were unchanged. According to Dr. Williams, there were no objective findings. *1333 Plaintiff continued to undergo physical therapy, and, by March 8, 1994, he had completed the six weeks of prescribed physical therapy. Because plaintiff's condition had not improved with the physical therapy and there still were no objective findings, Dr. Williams ordered that an MRI be performed.
An MRI was subsequently performed and showed a three (3) millimeter central herniation at L5-S1. Dr. Williams felt that there was a clear indication "subjectively" that the herniation was irritating the nerve root. On April 5, 1994, Dr. Williams recommended that plaintiff continue with conservative care and undergo additional physical therapy.
On June 13, 1994, Dr. Williams felt that he had exhausted all forms of treatment and, therefore, recommended that plaintiff undergo a laminectomy and discectomy for decompression of the nerve. Dr. Williams explained that a laminectomy involves removal of the lamina from the spine and the discectomy involves removal of the bulge which is irritating the nerves centrally. Dr. Williams testified that, although the MRI showed no evidence of nerve root impingement, it was his opinion that, through daily activity, the disc protrusion can move and impinge at some times on the nerve.
On July 10, 1994, plaintiff was involved in an automobile accident and was taken by ambulance to the Baton Rouge General Medical Center. The emergency room records indicate that plaintiff complained of neck and back pain, and x-rays of the cervical and lumbar spine reveal that there were degenerative changes without fracture. Plaintiff was discharged that same day with a diagnosis of acute sprain of the neck and back.
On July 12, 1994, plaintiff was again examined by Dr. Williams, who found plaintiff to be mentally distressed with poor coping abilities. Dr. Williams attributed these problems to the symptoms plaintiff had been enduring for the previous fifteen months. Dr. Williams testified that plaintiff did not inform him of the automobile accident which had occurred two days prior to his visit. According to Dr. Williams, such an event could aggravate one's condition. Plaintiff testified that he did not find it necessary to inform Dr. Williams of the automobile accident because he had suffered no injuries as a result of the accident.[2] Dr. Williams opined that, if plaintiff suffered no injuries from the automobile accident, the accident did not aggravate plaintiff's condition.
Dr. Williams continued to examine plaintiff on a regular basis. Despite plaintiff's continued complaints of pain, Dr. Williams was unable to detect any objective findings. Dr. Williams opined that, if it is ultimately determined that a laminectomy is "unnecessary," plaintiff has reached maximum medical improvement with regard to conservative care, and he would recommend vocational rehabilitation, use of a back brace, use of a non-steroidal anti-inflammatory agent, and periodic physical therapy.
At LWCC's request, plaintiff was examined by Dr. Steven Bailey, a neurosurgeon. Dr. Bailey testified, via deposition, that he examined plaintiff on July 26, 1994, and that plaintiff complained of low back pain radiating into the legs. According to Dr. Bailey, plaintiff exhibited signs of symptom magnification. Dr. Bailey's examination of plaintiff revealed no objective findings to substantiate plaintiff's complaints of pain. However, Dr. Bailey opined that plaintiff had an overall disability of approximately ten percent (10%). Nonetheless, Dr. Bailey felt that plaintiff was capable of returning to work without any restrictions and did not feel that further diagnostic testing was necessary.
*1334 Dr. Patrick Juneau, III, a neurosurgeon, was selected by the Office of Workers' Compensation to perform an independent medical examination of plaintiff. On October 14, 1994, Dr. Juneau examined plaintiff and opined that there was no evidence of neural compression. Dr. Juneau felt that plaintiff did "not need any surgery on his neck or his back." However, Dr. Juneau recommended that plaintiff's spine be managed conservatively and that plaintiff be referred to a physical and rehabilitative medicine specialist to oversee the conservative management of the spine. According to Dr. Juneau, once that physician determines that plaintiff has plateaued, plaintiff will have reached maximum medical improvement.
After considering all of the testimony and medical evidence, the hearing officer concluded that plaintiff had proved his entitlement to temporary total disability benefits after September 8, 1993, and stated as follows:
Patterson maintains that he is still disabled and cannot return to work. Supporting this contention was his own testimony, that of his wife, Dr. Williams and Dr. Juneau. Drs. Kilroy, Farries and Bailey disagree and have all released Patterson to return to his former employment. Dr. Bryant suggested that he seek another line of work. Under the provisions of LSA-R.S. 23:1221, the claimant must prove that he was unable to engage in any self-employment or gainful occupation for wages before he may be found temporarily totally disabled for purposes of worker's compensation.
This court found the Pattersons to be credible witnesses and accepts the opinions of Drs. Juneau and Williams. It seems inconsistent that Dr. Bailey found a 10% permanent impairment but released Patterson without restrictions. Dr. Williams' explanation for the lack of objective findings is convincing. Furthermore, Patterson made a good faith effort at vocational training on his own and this caused a worsening of his symptoms. Patterson met his burden of proof and remains temporarily, totally disabled.
We have thoroughly reviewed the entire record in this matter. Although there were conflicting medical opinions regarding plaintiff's ability to return to work, the hearing officer made credibility determinations and believed that plaintiff remained temporarily totally disabled after September 8, 1993. We conclude that a reasonable factual basis exists in the record for the hearing officer's finding. Furthermore, that finding is not manifestly erroneous or clearly wrong.

NECESSITY OF SURGERY
The defendants contend that the hearing officer erred in ordering them to authorize surgery for which there existed no medical indication.
An employer's duty to furnish all "necessary ... medical and surgical treatment" is set forth in LSA-R.S. 23:1203. Benoit v. PET, Incorporated, 93-1019 p. 11 (La.App. 3rd Cir. 4/6/94); 635 So.2d 620, 625, writ denied, 94-1168 (La.6/24/94); 640 So.2d 1352. In order to recover medical expenses under LSA-R.S. 23:1203, the claimant must prove that the expenses are reasonably necessary for treatment of a medical condition caused by the work injury. Mitchell v. Abbeville General Hospital, 93-1146 p. 2 (La.App. 3rd Cir. 4/6/94); 635 So.2d 540, 542; Whittington v. Rimcor, Inc., 601 So.2d 324, 329 (La.App. 2nd Cir.), writ denied, 605 So.2d 1366 (La.1992). See Williamson v. CIGNA/Insurance Company of North America, 595 So.2d 325, 328 (La.App. 3rd Cir.), writ denied, 596 So.2d 197 (La.1992); Lubom v. L.J. Earnest, Inc., 579 So.2d 1174, 1181 (La. App. 2nd Cir.1991).
It is well settled that a treating physician's testimony ordinarily will be given greater weight than the testimony of a physician who examines a plaintiff for a diagnosis only. Fitch v. Vintage Petroleum, Inc., 94-346 p. 8 (La.App. 3rd Cir. 11/2/94); 652 So.2d 998, 1001; Chevalier v. L.H. Bossier, Inc., 617 So.2d 1278, 1284 (La.App. 3rd Cir.1993). See Picou v. Circle, Inc., 578 So.2d 1183, 1188-89 (La.App. 5th Cir.1991).
A hearing officer's determination regarding medical necessity is entitled to great weight and will not be disturbed on appeal in the absence of manifest error or unless clearly wrong. See Stelly v. United Parcel Service, *1335 600 So.2d 156, 159-60 (La.App. 3rd Cir. 1992); Williamson v. CIGNA/Insurance Company of North America, 595 So.2d at 328; Fontenot v. Fireman's Fund Insurance Company, 549 So.2d 917, 920 (La.App. 3rd Cir.1989).
In the instant case, the physicians disagreed with regard to whether the laminectomy and discectomy were "necessary."
Dr. Williams, plaintiff's treating physician, felt that, because all forms of treatment had been exhausted without improvement of plaintiff's condition, plaintiff should undergo a laminectomy and discectomy for decompression of the nerve. Dr. Williams acknowledged that the MRI showed no evidence of nerve root impingement. However, he explained that, through daily activity, the disc protrusion can move and impinge at some times on the nerve. Thus, the impingement would not necessarily show up on an MRI.
Dr. Bailey testified that he had reviewed the results of plaintiff's CT-scans and MRIs, and he found no evidence to substantiate nerve root impingement. Dr. Bailey stated that the fact that an MRI shows a three (3) millimeter central herniation is not significant, unless there is evidence of a bulge pressing on a nerve root. According to Dr. Bailey, there was no such evidence with regard to plaintiff. Dr. Bailey explained that central disc herniations are an "almost normal" finding on the sensitive MRIs which are now available and that 30-35% of the population have small, central herniations. Dr. Bailey indicated that, when a disc is centrally herniated, there is much more space for it to move without entrapping a nerve. Based on his determinations, Dr. Bailey disagreed with Dr. Williams' recommendation that a laminectomy and discectomy be performed on plaintiff.
Dr. Curtis R. Partington of the Outpatient Diagnostic Center reviewed the MRI of plaintiff's lumbar spine and agreed with Dr. Bailey's assessment. Dr. Partington stated that he saw no evidence that the three (3) millimeter centrally located disc bulge caused any nerve root compression. Dr. Partington noted that these types of very small bulges are quite common, and, in the absence of nerve root compression, they are generally not of clinical significance.
Dr. Kilroy was shown reports of the bone scan performed on plaintiff subsequent to his examination of plaintiff. After reviewing the reports, Dr. Kilroy opined that the scan was normal as it showed no significant findings. He noted that there was no cervical or lumbar herniation, no significant canal stenosis, and no nerve root compression. Therefore, Dr. Kilroy opined that there was no indication that plaintiff needed a laminectomy and discectomy.
Dr. Farries stated that he reviewed reports of a CT-scan and MRI performed on plaintiff subsequent to his examination of plaintiff. According to Dr. Farries, there was nothing to indicate plaintiff's need for a laminectomy and discectomy. With regard to the CT-scan, Dr. Farries indicated that the report showed no evidence of a herniated disc in the lumbar or cervical area. With regard to the MRI, Dr. Farries stated that it showed only a three (3) millimeter central herniation at L5-S1, which was causing no significant stenosis. Dr. Farries noted that the disc is not impinging on a nerve root and that, unless the herniated disc is actually impinging or entrapping a nerve, it should not cause any symptoms. Dr. Farries opined that the three (3) millimeter herniation is not symptomatic and not causing plaintiff's problems.
After considering the above testimony and medical evidence, the hearing officer indicated that she found convincing Dr. Williams' explanation of the lack of objective evidence of nerve root impingement and ordered that the defendants authorize the laminectomy and discectomy. Based on our consideration of the record, as well as the fact that credibility determinations made by the hearing officer are to be given great deference, we conclude that there is a reasonable factual basis for the hearing officer's determination that the laminectomy and discectomy are "necessary" and are to be authorized by the defendants. Moreover, that determination is not manifestly erroneous or clearly wrong.

*1336 PENALTIES AND ATTORNEY'S FEES

The defendants contend that the hearing officer erred in finding them arbitrary and capricious in denying payment for that portion of Dr. Bryant's treatment for which pre-certification had not been obtained.[3] Therefore, the defendants reason that the hearing officer erred in awarding plaintiff penalties and attorney's fees.[4]
At all times pertinent hereto, LSA-R.S. 23:1201 E provided for the imposition of a 12% penalty on compensation and medical benefits which the employer or insurer fails to pay timely.[5] Penalties are not to be assessed when the employee's right to such benefits has been reasonably controverted by the employer or insurer. Schmitt v. City of New Orleans, 632 So.2d 367, 374 (La.App. 4th Cir.1993).
Furthermore, LSA-R.S. 23:1201.2 provided, in pertinent part, as follows:
Any insurer liable for claims arising under this Chapter ... shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject... insurer, in addition to the amount of the claim due, to payment of all reasonable attorney's fees for the prosecution and collection of such claim.
This statute requires a finding that the defendant acted arbitrarily and capriciously and without probable cause before attorney's fees can be assessed. Hayes v. Louisiana Risk Management, 93-1144 p. 4 (La.App. 3rd Cir. 4/6/94); 635 So.2d 591, 593, writ denied, 94-1020 (La.6/17/94); 638 So.2d 1097. See Bailey v. Smelser Oil & Gas, Inc., 620 So.2d 277, 280 (La.1993).
The statutes providing for penalties and attorney's fees, which are penal in nature, must be strictly construed. Hayes v. Louisiana Risk Management, 635 So.2d at 592; Polk v. Babineaux's Plumbing, Inc., 628 So.2d at 74. An assessment of penalties and attorney's fees is proper, unless the employee's rights to benefits are reasonably controverted. Schmitt v. City of New Orleans, 632 So.2d at 374. The test to determine whether the employee's right to benefits was reasonably controverted is set forth in Watson v. Amite Milling Co., Inc., 560 *1337 So.2d 902, 906 (La.App. 1st Cir.), writ denied, 567 So.2d 614 (La.1990), citing Chelette v. American Guarantee and Liability Insurance, Inc., 480 So.2d 363, 367 (La.App. 3rd Cir.1985), as follows:
[G]iven the facts, medical and otherwise, known to the employer or his insurer, did the employer or insurer have a reasonable basis to believe that medical expenses and compensation benefits were not due the employee. Stated another way, did the employer or his insurer have sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant.
Whether the refusal to pay or the discontinuation of benefits warrants the imposition of penalties and attorney's fees is a factual question which will not be disturbed upon review in the absence of manifest error or unless clearly wrong. Pitcher v. Hydro-Kem Services, Inc., 551 So.2d 736, 740 (La. App. 1st Cir.), writ denied, 553 So.2d 466 (La.1989). However, where the hearing officer commits legal error by applying the incorrect legal standard or principle, the court is required to determine the facts de novo from the entire record and render a decision on the merits. Gentile v. Baton Rouge General Medical Center, 95-0348 (La. App. 1st Cir. 11/9/95); 665 So.2d 422, 431; Johnson v. Vinson Guard Service, Inc., 92-2187 pp. 3-4 (La.App. 1st Cir. 3/11/94); 636 So.2d 914, 916, writ not considered, 94-1661 (La.9/2/94); 642 So.2d 1280.
In the instant case, with regard to the defendants' refusal to pay a portion of Dr. Bryant's bill, the hearing officer's reasons for judgment stated:
In regards to the balance of Dr. Bryant's bill, defendant's choice of orthopedist, Dr. Kilroy, recommended "some intense back rehabilitation" in July, 1993. No evidence of such treatment was offered, however, the claimant did continue to treat with Dr. Bryant in July and August. The court finds this treatment to be reasonable and necessary and orders that the balance of Bryant's bill be paid per the fee schedule. The court further finds that there was no reasonable basis to deny this treatment and awards a penalty of $1,000.00 and attorney's fees in the amount of $1,000.00 for the collection of this bill.
The remainder of the claim was reasonably controverted; the defendants were not arbitrary and capricious.

A. Award of Penalties

The hearing officer found that the award of penalties was warranted because the defendants did not reasonably controvert plaintiff's right to necessary chiropractic treatment in July and August of 1993.
The record indicates that LWCC approved ten (10) chiropractic visits for plaintiff, beginning on June 1, 1993. On June 21, 1993, a request for an extension of treatment was submitted to LWCC. On that date, LWCC approved an extension of three (3) chiropractic visits, which were to begin on June 21, 1993. Plaintiff then underwent chiropractic treatment for the extended three-day period from June 21, 1993, through June 23, 1993. However, plaintiff's chiropractic treatment continued beyond that date without another extension being approved by LWCC.
The hearing officer determined that certain chiropractic treatment received by plaintiff beyond the approved date, specifically treatment in July and August of 1993, was "reasonable and necessary." The hearing officer further found that the defendants had not "reasonably controverted" plaintiff's right to such treatment during the months of July and August and assessed penalties against the defendants.
Even assuming that the hearing officer correctly found that the defendants did not reasonably controvert plaintiff's right to chiropractic treatment in July and August of 1993, the evidence reveals that the defendants paid for plaintiff's chiropractic treatment from June 1, 1993, through September 10, 1993, well beyond the approved date of June 23, 1993. Because the defendants paid for all of plaintiff's chiropractic treatment which was found to be "reasonable and necessary" by the hearing officer, it was error for the hearing officer to assess the defendants with penalties.

*1338 B. Attorney's Fees

Because the defendants paid for plaintiff's chiropractic treatment, which was found to be "reasonable and necessary" by the hearing officer, we conclude that there is no reasonable factual basis for the hearing officer's finding that defendants were arbitrary and capricious for denying such payment.

ADDITIONAL ATTORNEY'S FEES
Plaintiff answered the defendants' appeal, requesting additional attorney's fees for work on the appellate level.
However, because we have found that the trial court's award of attorney's fees to plaintiff was inappropriate in this case, we find it unnecessary to address plaintiff's request for additional attorney's fees on appeal.

CONCLUSION
For the foregoing reasons, that part of the hearing officer's decision, assessing the defendants with penalties and attorney's fees, is reversed. In all other respects, the judgment is affirmed. Costs are assessed against the parties equally.
REVERSED IN PART; AFFIRMED IN PART.
NOTES
[1] By Acts 1989, No. 454, § 6, LSA-R.S. 23:1221 was amended, effective January 1, 1990. This amendment sets forth the more stringent standard of proof for a claimant seeking disability based on a temporary total disability.

Pursuant to LSA-R.S. 23:1221(1), as amended, the claimant must prove the nature and extent of his disability by "clear and convincing proof," unaided by any presumption of disability, that he is physically unable to engage in any employment or self-employment. Tanner v. International Maintenance Corporation, 602 So.2d 1133, 1137 (La.App. 1st Cir.1992). See Menard v. Winn Dixie Louisiana, Inc., 93-1497 pp. 9-10 (La. App. 3rd Cir. 6/1/94); 640 So.2d 775, 781, and Taylor v. Louisiana-Pacific Corporation, 602 So.2d 48, 51 n. 1 and 2 (La.App. 3rd Cir.), writs denied, 606 So.2d 541 and 542 (La.1992).
Prior to the 1989 amendment, the burden of proof in a claim for temporary total disability benefits was by a "preponderance of the evidence."
[2] During plaintiff's July 20, 1994, deposition, he was asked whether he had suffered any injuries after the May 28, 1993, work-related accident. Plaintiff replied that he had not. At trial, when plaintiff acknowledged that he had been involved in an automobile accident on July 10, 1994, the defendants moved for a forfeiture of plaintiff's workers' compensation benefits based on LSA-R.S. 23:1208, under which a claimant forfeits his benefits if he makes a false statement or representation for the purpose of receiving workers' compensation benefits. Thereafter, plaintiff explained that, during the deposition he was asked if he had suffered any injuries subsequent to the work-related accident, and he responded that he had not because he had not been injured in the July 10, 1994, automobile accident. The hearing officer subsequently denied the defendants' motion, and the defendants did not appeal this ruling. Therefore, the propriety of that ruling is not before us on appeal.
[3] Approval of non-emergency care is addressed in LSA-R.S. 23:1142 B, which provides, in pertinent part, as follows:

Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in nonemergency diagnostic testing or treatment without the mutual consent of the payor and the employee as provided by regulation. Except as provided herein, that portion of the fees for nonemergency services of each health care provider in excess of seven hundred fifty dollars shall not be an enforceable obligation against the employee or the employer or the employer's workers' compensation insurer unless the employee and the payor have agreed upon the diagnostic testing or treatment by the health care provider.
[4] We note that the defendants did not appeal the hearing officer's determination that they were to pay the balance of Dr. Bryant's bill. Therefore, that issue is not before us on appeal. The defendants appealed only the hearing officer's finding that they were arbitrary and capricious in denying payment for the portion of the bill for which pre-certification had not been obtained.
[5] LSA-R.S. 23:1201 E provided, in pertinent part, as follows:

E. If, pursuant to this Chapter, any compensation or medical benefits payable without an order is not paid within the time period provided in Subsections (B), (C), or (D) of this Section, there shall be added to such unpaid compensation a penalty of an amount equal to twelve percent thereof or a total penalty of not more than fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid, whichever is greater, which shall be paid at the same time as, and in addition to, such compensation, unless such nonpayment results from conditions over which the employer or insurer had no control.... Whenever the employee's right to such compensation or medical benefits has been reasonably controverted by the employer or his insurer, the penalties set forth in this Subsection shall not apply. The twelve percent or fifty dollars per calendar day, whichever is greater, additional payment shall be assessed against either the employer or the insurer, depending upon who was at fault in causing the delay.... Any additional compensation paid by the employer or insurer pursuant to this Section, shall be paid directly to the employee. The total fifty dollar per calendar day penalty provided for in this Subsection shall not exceed two thousand dollars in the aggregate.