731 So.2d 473 (1999)
James SPENCE, Plaintiff-Appellee,
v.
INDUSTRIAL N.D.T., et al., Defendants-Appellants.
No. 31,744-WCA.
Court of Appeal of Louisiana, Second Circuit.
March 31, 1999.
*475 Law Offices of Jack M. Bailey, Jr. By J. Allen Cooper, Jr., Shreveport, Counsel for Appellee.
Juge, Napolitano, Leyva, Guilbeau & Ruli By Lawrence B. Frieman, Metairie, Counsel for Appellants.
Before NORRIS, KOSTELKA, DREW, JJ.
KOSTELKA, J.
Defendants appeal the decision of the workers' compensation judge ("WCJ") which ordered them to pay James Spence ("Spence") temporary total disability benefits, medical and travel expenses, and penalties and attorney's fees. Spence answers the appeal seeking reimbursement for those medical expenses paid by his mother's insurance and an increase in penalties and fees. We amend the award and affirm as amended.

FACTS AND PROCEDURAL HISTORY
On March 30, 1995, during the course and scope of his employment with Liberty Technical Services (formerly Industrial NDT) ("Liberty"), Spence slipped off a pipe, striking his lower back on an anchor bolt as he fell to the ground. Spence immediately experienced short-term paralysis, was taken to the emergency room and released a few hours later. Thereafter, claimant sought treatment with his family physician, Dr. Joseph Bell. Unable to assist his patient with his lower back and leg pain, Dr. Bell referred Spence to a neurosurgeon.
At that time, Liberty's insurer, Royal Insurance Company, retained the services of Marsha Murray, a rehabilitation nurse, to monitor claimant's progress and to coordinate his medical treatment. Accordingly, Murray helped Spence find a neurosurgeon close to his home. She discovered that of the two neurosurgeons in Texarkana (approximately twenty miles from claimant's home in Ashdown, Arkansas), only one accepted workers' compensation patients. But, when the earliest appointment available with Dr. Freddie Contreras proved to be over six weeks away, Murray suggested that Spence see an orthopedist. Inasmuch as claimant did not know an orthopedist in the area, Murray suggested two such physicians located in Texarkana. Spence elected to see Dr. Carey Alkire.
During his first examination of Spence on July 11, 1995, Dr. Alkire detected no objective findings to corroborate claimant's complaints of pain, believed the patient had reached maximum medical improvement, and concluded that he could return to work. Nevertheless, the physician ordered tests to help determine if a source existed for Spence's continuing complaints. The myelogram, CT scan, MRI, and nerve conduction study all proved to be within normal ranges. After reviewing these results, Dr. Alkire assessed a zero percent impairment rating. The doctor did not consider Spence to be a surgical candidate nor unable to work.
In the interim, claimant kept his August appointment with Dr. Contreras. Reviewing the same studies, the neurosurgeon concluded that Spence more than likely was suffering from a musculoskeletal problem rather than a nerve root irritation. Dr. Contreras recommended continued conservative therapy with a family doctor; he did not find surgical intervention to be appropriate.
Discouraged and allegedly experiencing shooting pain and weakness in his legs and lower back, Spence elected to seek treatment from another orthopedist, Dr. Austin Gleason. Claimant did not, however, request prior approval for this change of treating physician. Nor did the involved health care providers obtain authorization before initiating the treatment that followed. Dr. Gleason's physical exam of Spence indicated a need for further diagnostic testinga second MRI and a discogram. Both studies strongly suggested a problem at the L5-S1 disc level. Considering these test results and Spence's lack of response to conservative treatment, Dr. *476 Gleason recommended a disectomy and fusion.
Upon learning of the surgical recommendation, defendants requested that claimant submit to an examination by another orthopedist to obtain a second opinion. Spence refused, necessitating that defendants file a motion to compel. The WCJ denied the motion, finding that Dr. Alkire had been defendants' choice of orthopedist and concluding that Spence thus had a right to choose Dr. Gleason without first obtaining defendants' consent. This court disagreed and ordered Spence to "submit to an independent medical evaluation by Dr. Carl Goodman, the orthopedist chosen by defendants." See Spence v. Industrial NDT, 29,077-CW (La.App.2d Cir.08/01/96).
While awaiting this court's resolution of the motion to compel, and relying on the WCJ's decision that Drs. Alkire and Contreras were the defendants' choices of doctors, defendants sought to have Spence examined by these physicians. Again, Spence refused. After receipt of this court's order, defendants scheduled an appointment with Dr. Goodman. Spence declined to attend that appointment as well. Defendants then successfully sought an order suspending claimant's benefits until he complied with the appellate court order.
Ultimately, Spence elected to submit to surgery at the cost of his mother's health insurance. The procedure provided some relief and Dr. Gleason now believes that while his patient continues to be disabled from performing his prior employment, he could return to medium-duty work. When Spence finally acquiesced and attended an appointment with Dr. Goodman after the surgery, that orthopedist agreed that the MRI revealed a small midline disc protrusion at L5-S1. Dr. Goodman opined, however, that he would not have considered Spence to have been a surgical candidate. Regarding disability, this orthopedist stated he would not have released claimant to perform his pre-injury employment either before or after the surgery.
After trial on the merits, the WCJ ordered defendants to pay past due temporary total disability benefits[1] from the date of suspension; all outstanding reasonable and necessary medical expenses and prescription bills arising from the work injury which had not been paid by a health insurer; requested mileage reimbursements; and penalties and attorney's fees. This appeal ensued.

DISCUSSION
Defendants appeal the awards of benefits, medical and travel expenses, and penalties and attorney's fees. Spence answers the appeal seeking payment of medical expenses covered by his mother's health insurance and an increase in penalties and fees.

Disability Benefits
Defendants challenge Spence's entitlement to temporary total disability benefits on the ground that claimant should be penalized for his failure to obey this court's order to submit to a medical examination by Dr. Goodman. In that regard, La. R.S. 23:1124(A) provides:
If the employee refuses to submit himself to a medical examination at the behest of the employer ... or in anywise obstructs the same, his right to compensation... shall be suspended until the examination takes place.... When a right to compensation is suspended no compensation shall be payable in respect to the period of suspension.
Thus, the sanction for an employee's failure to submit to a medical examination is suspension, rather than termination, of benefits. See Collins v. General Motors, 605 So.2d 219 (La.App. 2d Cir.1992).
The reasonableness of an examination by Dr. Goodman was judicially determined *477 when this court issued its order that Spence "submit to an independent medical evaluation by Dr. Carl Goodman, the orthopedist chosen by defendants." Thus, defendants properly sought a suspension of benefits under the statute. Nevertheless, the period of suspension should have ended and benefits should have been reinstated upon Spence's compliance with the court order on October 11, 1996.[2] The judgment below should be so amended.
As previously noted, both Dr. Goodman and Dr. Gleason believed Spence could not return to his pre-injury employment. Accordingly, with no evidence offered regarding the type of work that Spence could perform, defendants owe temporary total disability benefits from the date of compliance with the order until such time as those benefits are subject to modification.

Medical Benefits
Defendants next complain that Spence sought treatment from Dr. Gleason without first soliciting their consent per La. R.S. 23:1121(B) or obtaining their approval per La. R.S. 23:1142(B). Accordingly, they argue, the WCJ erred in ordering them to pay all outstanding medical expenses incurred as a result of that physician's treatment.
Of course, an employer is obligated to furnish all necessary medical expenses related to a work injury, La. R.S. 23:1203, and a claimant may recover those expenses reasonably necessary for the treatment of a medical condition caused by a work-related injury. Cowthran v. Horseshoe Casino, 31,084 (La.App.2d Cir.09/23/98), 718 So.2d 1066. A WCJ's determination regarding medical necessity is entitled to great weight and will not be disturbed on appeal in the absence of manifest error or unless clearly wrong. Patterson v. Long, 96 0191 (La.App. 1st Cir.11/08/96), 682 So.2d 1327, writ denied, 96-2958 (La.02/07/97), 688 So.2d 499. In that regard, it is the function of the WCJ to assess the weight to be accorded both the lay and medical testimony, and the court may accept or reject the opinion of a medical expert depending upon what impressions the qualifications, credibility, and testimony of that expert make on the court. Davison v. Horseshoe Casino, 31,166 (La.App.2d Cir.10/28/98), 720 So.2d 785, writ denied, 98-2950 (La.01/29/99), ___ So.2d ___, 1999 WL 51705.
The several diagnostic studies conducted prior to Spence's visit with Dr. Gleason did not reveal any significant disc pathology nor did they suggest a cause for claimant's continued pain. Accordingly, both Dr. Alkire and Dr. Contreras believed conservative treatment, rather than surgical intervention, to be the best course for Spence. Dr. Gleason's subsequent examinations, however, rendered different results. Finding Spence's complaints of pain to be reliable, this orthopedist ordered a second MRI as well as a discogram. This time the MRI revealed a small midline bulge at L5-S1; and, the discogram results revealed a "high probability of discogenic pain source at the L5-S1 level, provoking the patient's low back and left lower extremity pain as well as right buttock pain." Moreover, during the surgical procedure, Dr. Gleason could visualize damage to the disc and determined that his surgical intervention relieved compression on the S1 nerve root. Finally, Spence reported some pain relief following the surgery.
Thus, despite the contrary opinions of Drs. Alkire, Contreras, Goodman, and Mimeles,[3] the evidence supports the WCJ's *478 conclusion and we cannot say that she clearly erred in determining that this course of treatment was reasonable and medically necessary. Cf. Patterson, supra.
Even so, La. R.S. 23:1142 limits a claimant's recovery for unauthorized medical treatment[4] to $750.00 per health care provider. That statute provides, in pertinent part:
[E]ach health care provider may not incur more than a total of seven hundred fifty dollars in nonemergency diagnostic testing or treatment without the mutual consent of the payor and the employee as provided by regulation. Except as provided herein, that portion of the fees for nonemergency services of each health care provider in excess of seven hundred fifty dollars shall not be an enforceable obligation against the employee or the employer or the employer's workers' compensation insurer unless the employee and the payor have agreed upon the diagnostic testing or treatment by the health care provider.
Thus, even necessary medical expenses related to the work-injury may not be compensable if the payor reasonably withholds its consent for the treatment. See Jones v. El Mesero Restaurant, 97-636 (La.App. 3d Cir.10/29/97), 702 So.2d 1133.
Considering the previously rendered opinions of Drs. Alkire and Contreras, defendants committed no error in exercising their statutory right to seek a second surgical opinion. By refusing to comply with that request, and later this court's order, Spence deprived defendants of the information they needed to make a decision regarding the procedures suggested by Dr. Gleason. Clearly the statutory cap applies in this case. The judgment should be amended to limit Spence's recovery accordingly.

Travel Expenses
The employer shall be liable for the actual expenses reasonably and necessarily incurred by the employee for mileage reasonably and necessarily traveled by the employee in order to obtain medical services. La. R.S. 23:1203(D). Of course, an injured employee must present evidence of the actual expenses incurred in order to recover travel expenses. Demery v. Dupree, 511 So.2d 1268 (La.App. 2d Cir.), writ denied, 514 So.2d 456 (La.1987). As acknowledged by defendants, Spence submitted a listing of dates and places he traveled to obtain medical services, along with a specification of the number of miles driven. At trial, claimant testified that trips were made in either his own or his father's automobile. We find no error in the WCJ's acceptance of this as sufficient proof to recover travel expenses. Cf. Demery, supra (where recovery was not barred by the fact that plaintiff's brother provided some of the transportation).

Reimbursement for Health Insurance
In his answer to the appeal, Spence contends that the WCJ erred in granting defendants an offset for the medical bills paid by his mother's health insurance. Regarding such offsets, La. R.S. 23:1212 provides:
Payment by any person or entity, other than a direct payment by the employee, a relative or friend of the employee, of medical expenses that are owed under this Chapter shall extinguish the claim against the employer or insurer for those medical expenses.... If the employee or the employee's spouse actually pay premiums for health insurance, either as direct payments or as itemized deductions from their salaries, then this offset will only apply in the same percentage, *479 if any, that the employer of the employee or the employer of his spouse paid the health insurance premiums. [Emphasis added.]
Under this statute, Spence could recover any medical expenses actually paid directly by his mother, but none of those that had been paid by her insurer. See Antrainer v. Great Atlantic & Pacific Tea Co., 97-1554 (La.App. 1st Cir.04/08/98), 712 So.2d 590. This assignment of error is without merit.

Penalties and Attorney's Fees
In a final assignment of error, defendants seek reversal of the award of penalties and attorney's fees.
Determination of whether an employer and insurer should be cast with penalties and attorney's fees in a workers' compensation action is essentially a question of fact and should not be disturbed on appeal absent manifest error. Harvey v. BE & K Construction, 30,825 (La.App.2d Cir.08/19/98), 716 So.2d 514. Whether the refusal to pay workers' compensation benefits is arbitrary, capricious, or without probable cause depends primarily on the facts known to the employer at the time of its refusal. Id.
Although finding that the defendants reasonably controverted claimant's entitlement to medical expenses given the contrary opinions espoused by Dr. Alkire and Dr. Contreras, the WCJ assessed penalties and attorney's fees against defendants for their failure to reinstate disability benefits after Spence complied with the appellate court order. We find no error in that award.
If a claimant requests an increase in attorney's fees, it is usually awarded when the defendant appeals, obtains no relief, and the appeal necessitates additional work by the claimant's counsel. Harvey, supra. Spence made such a request; however, inasmuch as defendants are entitled to some of the relief they requested, we decline to raise the award.

CONCLUSION
For the foregoing reasons, the judgment below is amended to reflect that disability benefits are due retroactive to October 11, 1996, and that those unpaid medical expenses related to Dr. Gleason's treatment are limited to $750.00 per health care provider. In all other respects, the judgment below is affirmed. Costs are assessed equally between Spence and defendants.
AMENDED, AND AS AMENDED, AFFIRMED.
NORRIS, C.J., concurs in the result.
NORRIS, C.J., concurring in the result.
I respectfully concur in the result. The record is not, in my view, totally clear that Dr. Alkire was Spence's choice of treating orthopedist. If he was not, then R.S. 23:1121 B would permit Spence to select Dr. Gleason and pursue any course of treatment that is medically reasonable and necessary; only the initial visit, made without the consent of the employer or comp carrier, would be unrecoverable. See, e.g., Lemoine v. Hessmer Nursing Home, 94-836 (La.App. 3 Cir. 3/1/95), 651 So.2d 444. By contrast, if Dr. Alkire was indeed Spence's chosen orthopedist, then R.S. 23:1142 B(1) would require him to obtain the defendant's approval to select another orthopedist, such as Dr. Gleason, for nonemergency treatment; without such approval, the recovery for Dr. Gleason's services is limited to $750.00. See, e.g., Prejean v. RPM Pizza, 93-635 (La.App. 3 Cir. 2/2/94), 631 So.2d 1359, writ denied 94-0715 (La.4/29/94), 637 So.2d 468. Spence did not obtain approval for the examination or surgery by Dr. Gleason.
However, this court's writ order of August 1, 1996 stated that Dr. Alkire was not the defendant's choice of orthopedist. Since we have already decreed, if only by inference, that Spence already made his *480 choice of orthopedist, I respectfully concur in the result.
NOTES
[1] The parties stipulated that Spence had been paid, from April 1, 1995 until September 5, 1996, the maximum benefit of $323.00 per week based upon an average weekly wage of $601.56.
[2] In her oral reasons for judgment, the WCJ noted that benefits would be owed from the date Spence complied with the appellate court order. In the judgment, however, benefits are ordered retroactive to the original date of suspension. Although Spence's actions do not warrant a complete forfeiture of disability benefits, La. R.S. 23:1124(A) clearly states that "no compensation shall be payable in respect to the period of suspension."
[3] Dr. Robert Mimeles reviewed Spence's medical records but did not examine him. This doctor, too, concluded that Spence was not a surgical candidate.
[4] Spence required authorization not only for the procedures performed but also for the treatment by Dr. Gleason. Implicit in this court's order on the motion to compel is a finding that Dr. Alkire was claimant's choice of treating orthopedist. Nothing in the record, the WCJ's judgment, or the oral reasons therefor contradicts this finding. Thus, per La. R.S. 23:1121(B), Spence needed the payor's consent prior to seeking treatment from Dr. Gleason.