772 So.2d 326 (2000)
Richard BEN
v.
HOLTRACHEM, INC. and Louisiana Workers' Compensation Corporation.
No. 00-635.
Court of Appeal of Louisiana, Third Circuit.
November 2, 2000.
*327 Craig A. Davis, Lafayette, LA, Counsel for Plaintiff/Appellee, Richard Ben.
Merilla B. Miller, Egan, Johnson & Stiltner, Baton Rouge, LA, Counsel for Defendants/Appellants, Holtrachem, Inc. and Louisiana Workers' Compensation Corporation.
(Court composed of Judge HENRY L. YELVERTON, Judge ULYSSES GENE THIBODEAUX and Judge SYLVIA R. COOKS).
THIBODEAUX, Judge.
The defendants-appellants, the Louisiana Workers' Compensation Corporation (hereinafter "LWCC"), and Holtrachem, Inc., appeal the judgment of the Office of Workers' Compensation Administration in favor of plaintiff-appellee, Richard Ben. Mr. Ben was injured while working for Cal Chlor Corporation, the predecessor of Holtrachem, Inc., lifting eighty pound bags of chemical onto and off trains. The Office of Workers' Compensation Administration concluded that LWCC was arbitrary and capricious in initially denying an MRI requested by Mr. Ben's treating physician, Dr. John Cobb; that LWCC had miscalculated Mr. Ben's average weekly wage; and that Mr. Ben was entitled to penalties and attorney fees as a result of the arbitrary and capricious handling by LWCC. We affirm for the following reasons.

I.

ISSUES
The issues presented for review are: (1) whether the workers' compensation judge (hereinafter "WCJ") erred in finding that LWCC had miscalculated the average *328 weekly wage of claimant; (2) whether the workers' compensation judge erred in finding that LWCC was arbitrary and capricious in initially denying the MRI recommended by Dr. John Cobb, and awarding penalties and attorney fees; and, (3) whether the workers' compensation judge erred in finding that defendants were arbitrary and capricious in calculating Mr. Ben's average weekly wage and awarding penalties and attorney fees therefor.

II.

FACTS
Mr. Ben was injured on June 11, 1993 while he was employed by Cal-Chlor. At the time of the accident Mr. Ben was stacking eighty pound bags of chemical when his back began to cause him intense pain. A few months after his injury Mr. Ben began treating with his choice of an orthopedic surgeon, Dr. John Cobb. Dr. Cobb began to treat Mr. Ben with medication but the pain continued and Dr. Cobb recommended surgery.
Dr. Cobb performed surgery on Mr. Ben's lower back in 1995 consisting of a discectomy and fusion on the right side of his lumbar spine. Mr. Ben testified that the pain returned. Dr. Cobb, after attempting injection therapy, performed a second surgery on May 7, 1996, characterized as a discectomy and extended fusion to L4, which alleviated some of the pain. Mr. Ben continued to experience pain. A year later, Dr. Cobb requested an MRI be performed on Mr. Ben's lumbar spine to determine the source of the continued pain.
LWCC sent the MRI request to Professional Healthcare Services (hereinafter "PHS") to be reviewed by its medical director for a determination of its medical necessity. PHS determined the MRI was not necessary. The WCJ noted that PHS is located in the same office building as LWCC and rents its office space from them. LWCC then requested a second opinion based on a medical examination of Mr. Ben performed by Dr. Gregory Gidman. Dr. Gidman noted in his report that no further diagnostic testing was necessary and that Mr. Ben had reached maximum medical improvement, should undergo vocational rehabilitation and return to work. LWCC then requested the Office of Workers' Compensation to appoint an independent medical examiner to evaluate Mr. Ben to determine his disability level and also to determine whether the MRI was necessary. Dr. Randall Lea, an orthopedic surgeon, examined Mr. Ben on April 2, 1998. Dr. Lea found Mr. Ben to have a fifteen percent whole body impairment rating. He would not recommend an MRI because it would not necessarily show a non-union of the fusion, or any SI joint mechanical abnormalities. Also, Dr. Lea's report stressed that he would not recommend an MRI because he would not recommend additional surgery for Mr. Ben.
Based on the medical reports of Dr. Gidman and Dr. Lea, LWCC denied Dr. Cobb's request for an MRI. Mr. Ben then sought out a neurosurgeon of his choice, Dr. William F. Foster, Jr., who examined Mr. Ben on June 30, 1999 and determined that a MRI was necessary. The request for an MRI went back to LWCC and PHS. The MRI was then approved almost two years after the original request from Dr. Cobb. A third surgery was ultimately performed on Mr. Ben's lower back. The WCJ ultimately held that the denial of the MRI was arbitrary and capricious and accessed LWCC penalties and fees.
After sustaining his injury, Mr. Ben was unable to work. He received workers' compensation benefits from LWCC. LWCC determined Mr. Ben's average weekly wage (hereinafter "AWW") at $380.50 and his workers' compensation rate at $259.01 based on information faxed to them from Cal Chlor. Mr. Ben contends that the AWW was calculated incorrectly as it should have been based on an eighty hour work week and should not include the week of his injury. The WCJ agreed based on the testimony of Mr. Ben *329 and a pay stub he produced from November 25, 1992 indicating that he worked eighty hours that week. LWCC based its calculations on a fax received from Cal Chlor indicating that Mr. Ben was paid $380.00 for the week ending May 23; $462.50 for the week ending May 30; $339.75 for the week ending June 6; and $371.75 for the week ending June 13 (only a partial week as he was injured on June 11). No supportive documents such as pay stubs or time cards accompanied the August 8, 1998 handwritten fax. The WCJ ultimately held that LWCC withheld benefits from Mr. Ben and assessed it penalties and fees.

III.

LAW AND DISCUSSION

Standard of Review
An appellate court may not set aside the factual findings of a workers compensation judge in the absence of manifest error or unless it is clearly wrong. Wackenhut Corrections Corp. v. Bradley, 96-796 (La.App. 3 Cir. 12/26/96); 685 So.2d 661. The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Where there is a conflict in the testimony, "reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review" even though the appellate court may feel that its own evaluations and inferences are reasonable. Stobart v. State through Dep't of Transp. and Dev., 617 So.2d 880 (La.1993). Deference is due to the factfinder's determinations regarding the credibility of witnesses "for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." Rosell v. ESCO, 549 So.2d 840 (La.1989).

Calculation of Average Weekly Wage
"The average weekly wage shall be determined as follows: If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident ..." La.R.S. 23:1021(10)(a)(i). The trial court found that LWCC based Mr. Ben's AWW on the weeks ending May 23, May 30, June 6 and June 13. The trial court noted correctly that the week ending May 16 must also be considered. La.R.S. 23:1021(1)(a)(i) clearly states that the AWW is calculated by the average actual hours worked in the four full weeks preceding the injury. Thus, the partial week Mr. Ben worked ending June 13 should not be considered in calculating his AWW as it is not a full week preceding his injury.
LWCC should have obtained the actual payroll records from Cal-Chlor in 1993 immediately or shortly after the accident in order to correctly calculate Mr. Ben's AWW. Certainly at the time of the accident Cal-Chlor knew the number of hours and the wages earned by Mr. Ben for the four weeks immediately preceding the injury. The statute is clear that the average weekly wage is based upon the four weeks immediately preceding the week of injury; it does not include the week of the injury. The trial court did not err in finding that LWCC miscalculated Mr. Ben's average weekly wage.

Penalties for Miscalculation of Average Weekly Wage
LWCC contends that the trial court erred in awarding penalties and fees against them for miscalculating Mr. Ben's AWW. The rule is well settled that a workers' compensation claimant is entitled to penalties and attorney fees if benefits are withheld. To avoid the imposition of penalties and attorney fees an employee's right to compensation has to be reasonably controverted. La.R.S. 23:1201(F)(2).
*330 Considering Mr. Ben's testimony, which the trial court found both persuasive and uncontradicted, the proper method to calculate his AWW would be to give him credit for an eighty hour work week for the pay period ending May 16, 1993. Mr. Ben's wages were not reasonably controverted but withheld because of miscalculations and the failure of LWCC to acquire written payroll records from Cal Chlor at the time of the accident. A WCJ's ruling with regard to penalties and attorney fees is a factual determination that will not be altered unless found to be clearly wrong or manifestly erroneous. The trial judge was not manifestly erroneous and we affirm the award of $2,000.00 for LWCC's failure to properly calculate Mr. Ben's AWW in 1993.

Denying the MRI
LWCC complains that the trial court erred in finding that they were arbitrary and capricious in initially denying the MRI recommended by Dr. John Cobb, and awarding attorney fees. An employer is obligated to furnish all necessary medical expenses related to a work injury, La. R.S. 23:1203. A claimant may recover those expenses reasonably necessary for the treatment of a medical condition caused by a work-related injury. Fruge v. Gravity Drainage District No. 5, 94-685 (La.App. 3 Cir. 12/7/94), 647 So.2d 561, writ denied, 95-0066 (La.3/10/95); 650 So.2d 1180; Cowthran v. Horseshoe Casino, 31,084 (La.App. 2 Cir. 09/23/98); 718 So.2d 1066. A WCJ's determination regarding medical necessity is entitled to great weight and will not be disturbed on appeal in the absence of manifest error or unless clearly wrong. Patterson v. Long, 96 0191 (La.App. 1 Cir. 11/08/96); 682 So.2d 1327, writ denied, 96-2958 (La.2/07/97); 688 So.2d 499. It is the function of the workers' compensation judge to assess the weight to be accorded both the law and medical testimony, and the court may accept or reject the opinion of a medical expert depending on what impressions the qualifications, credibility, and testimony of that expert make on the court. Spence v. Industrial N.D.T., 31,744 (La. App. 2 Cir. 3/31/99); 731 So.2d 473. The workers' compensation judge accorded little weight to the opinions of Dr. Lea and Dr. Gidman that the MRI requested by Dr. Cobb was "not medically reasonable or necessary." The workers' compensation judge opined that Dr. Lea attempted to deny the necessity of a third surgery for Mr. Ben when the only issue was the necessity of an MRI to determine the source of his continued complaints of pain. The judge "place[d] no reliance on Dr. Lea's opinion ..." Dr. Cobb's opinion is entitled to great weight due to the doctors long history of contact with Mr. Ben and the fact that he performed two previous surgeries on Mr. Ben's lower back in an effort to alleviate his pain. It was only after two neurosurgeons refused to evaluate Mr. Ben, and after Dr. Foster agreed with Dr. Cobb that an MRI would be the best diagnostic tool to determine the source of Mr. Ben's complaints of pain, did LWCC agree to the MRI requested nearly two years earlier. The uncontradicted testimony of Mr. Ben that Dr. Gidman did not even make a cursory examination of him to determine the extent of his disability adds additional support for the lack of LWCC's reasonable controversion of this claim. Even if Dr. Gidman had conducted an examination of Mr. Ben, our jurisprudence accords superior weight to the treating physician. "It is clear under Louisiana law that the diagnosis and opinions of treating physicians are entitled to more weight than those doctors examining the plaintiff for litigation purposes only." Jaeckle v. Dresser Industries, Inc., 457 So.2d 646 (La.1984). We agree with the WCJ that LWCC's refusal to approve the MRI recommended by Dr. Cobb, Mr. Ben's treating physician, and later confirmed by Dr. Foster, was arbitrary and capricious. We also affirm the penalty imposed in accordance with La.R.S. 23:1201 in the amount of $2,000.00.

*331 Claimant's Assignments
In brief, the claimant asks this court for $1,500.00 in attorney fees in defending this appeal. We are precluded from reviewing the claimant's request for additional attorney fees for the defense of the matter on appeal in the absence of an indication that a timely answer was filed in this regard. See La.Code Civ.P. art. 2133; Woolf & Magee v. Hughes, 95-863 (La. App. 3 Cir. 12/6/95); 666 So.2d 1128, writ denied, 96-0073 (La.3/15/96); 669 So.2d 427.

IV.

CONCLUSION
The denial by LWCC of the MRI for Mr. Ben requested by Dr. Cobb was not reasonably controverted as required by La.R.S. 23:1201. La.R.S. 23:1203 states an employer has a duty to furnish all necessary hospital care and medical services. La.R.S. 23:1201(E) requires medical benefits to be paid within sixty days after an employer gets written notice. Clearly, the request for the MRI made in October 1997 and not granted until July 1999 is more than sixty days and thus penalties and attorney fees were properly awarded. Also, LWCC failed to accurately calculate Mr. Ben's AWW based on the clear language of La.R.S. 23:1021(1)(a)(i). By failing to calculate Mr. Ben's AWW correctly, thus withholding benefits, the WCJ correctly assessed penalties and attorney fees against LWCC.
Accordingly, we affirm the judgment of the trial court; all costs are assessed against the defendant-appellant.
AFFIRMED.