647 So.2d 561 (1994)
Larry FRUGE, Plaintiff-Appellant,
v.
GRAVITY DRAINAGE DISTRICT NO. 5, Defendant-Appellee.
No. 94-685.
Court of Appeal of Louisiana, Third Circuit.
December 7, 1994.
Writ Denied March 10, 1995.
*563 Jere Jay Bice, Lake Charles, for Larry James Fruge.
Michael Jesse McNulty III, Lake Charles, for Gravity Drainage Dist. # 5.
Before KNOLL and WOODARD, JJ., and BERTRAND,[*] J. Pro Tem.
WOODARD, Judge.
In this workers' compensation case, the plaintiff appeals from the hearing officer's judgment finding that his disabling symptoms and related medical expenses were not caused by the work accident and that the defendant was not arbitrary and capricious in terminating his benefits.

FACTS
On April 11, 1989, the plaintiff, Larry Fruge, who was employed by Calcasieu Parish Gravity Drainage District No. 5 (Gravity Drainage), hurt his lower back when he slipped and fell off a dragline in the course and scope of his employment. He was immediately taken to West CalcasieuCameron Hospital where Dr. Charles Fellows, a general surgeon, diagnosed his injury as a lumbar sprain. On May 1, 1989, Dr. Gerald Litel, a neurological surgeon, diagnosed Mr. Fruge as suffering from a lower back sprain and anticipated that conservative efforts would be adequate in achieving relief. Dr. Litel also noted that his complaints of numbness in his peri-anal area and legs were the result of a preexisting spinal cord tumor that had been getting progressively worse over the last few years. On July 7, 1989, Dr. Sam Finn removed the spinal cord tumor at the L1-L2 level. Mr. Fruge previously had a tumor removed in the same area when he was nine months old and again, when he was two years old. After the surgery, he developed a decubitus ulcer in the same area where the tumor was removed.
Gravity Drainage's workers' compensation insurer, Commercial Union Insurance Company (Commercial Union), paid Mr. Fruge $262.15 in benefits every week from the time of his injury until May 25, 1992 when Dr. Litel provided it with a written report, advising that Mr. Fruge's lumbar sprain had completely healed and that his current disabling symptoms were caused by the spinal cord tumor and not the work accident. Commercial Union also paid $17,201.25 of his medical expenses; however, it did not pay for the removal of his spinal cord tumor nor for treatment of the ulcer. Subsequently, Mr. Fruge filed suit against Gravity Drainage seeking reinstatement of his benefits and payment of his medical expenses for the removal of the tumor and treatment of his ulcer. The hearing officer rendered judgment on March 7, 1994, finding that Mr. Fruge failed to prove by a preponderance of the evidence that his current disabling symptoms were caused by the work accident.
Mr. Fruge appeals from that judgment and asserts the following assignments of error: The hearing officer erred in (1) ruling that his injury was a lumbar sprain of eighteen months disability and not a continuing disability; (2) denying him an award for medical treatment; and, (3) failing to award attorney's fees and penalties.

LAW
WERE MR. FRUGE'S DISABLING SYMPTOMS CAUSED BY THE ACCIDENT?
An employee in a workers' compensation case initially has the burden of establishing *564 by a preponderance of the evidence that his employment accident caused his disability. Bruno v. Harbert Intern. Inc., 593 So.2d 357 (La.1992). A preexisting disease or infirmity of an employee does not disqualify the workers' compensation claim if the work injury aggravated, accelerated or combined with the disease or infirmity to produce the disability for which compensation is claimed. Robinson v. Travelers Ins. Co., 619 So.2d 1261 (La.App. 3 Cir.1993). The employee's work injury is presumed to have aggravated, accelerated or combined with his preexisting disease or infirmity to produce his disability when the employee proves that: (1) before the accident, he had not manifested the disabling symptoms; (2) commencing with the accident, the disabling symptoms appeared; and, (3) there is either medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and the activation of the disabling condition. Walton v. Normandy Village Homes Ass'n, Inc., 475 So.2d 320 (La.1985). Whether there is a causal connection between the disability and employment is a question of fact that cannot be disturbed by an appellate court unless the hearing officer was clearly wrong. Baker v. Conagra Broiler Co., 640 So.2d 494 (La.App. 3 Cir. 1994).
Mr. Fruge argues that the work accident "aggravated" his spinal cord tumor, which in turn, produced his disabling symptoms, namely: lower back pain; and numbness in his legs and peri-anal area. He also asserts that he suffered a herniated disc at the L5-S1 level as a result of the work accident.
Gravity Drainage, on the other hand, argues that these disabling symptoms were present before the accident, were caused by his preexisting spinal cord tumor, and that the only injury he suffered as a result of the work accident was a lumbar sprain which had completely healed eighteen months after the accident. We agree.
The medical reports from Dr. Fellows clearly indicate that Mr. Fruge had been limping for two to three months before the accident. This was corroborated by Mr. Richard Blackwell, Mr. Fruge's superintendent at Gravity District, who stated that prior to the accident he was limping around and having problems with numbness in his legs. The medical records and testimony of Dr. Litel note that before the accident, he had been suffering from numbness in his legs and peri-anal area which was getting progressively worse. Mr. Fruge could not remember what he told Dr. Litel concerning his disabling symptoms; however, he did say that he would not disagree with Dr. Litel.
The medical evidence in the record substantiates that prior to the work accident Mr. Fruge suffered from various symptoms directly related to the tumor, namely: intermittent lower back pain; lower extremity numbness; neurogenic bladder; frequent urinary tract infections; impotence; and, loose sphincter tone. Because of these symptoms, he missed forty-six (46) days of work in 1988 and nine (9) days of work in 1989 before the work accident. It is clear from the record that Mr. Fruge was not a healthy man before the accident; that his disabling symptoms had manifested themselves prior to the work accident; and, that he was forced to miss a lot of work because of his health.
Further, Drs. Gerald Litel, John Raggio, and Thomas Ford all unequivocally testified that the only disability Mr. Fruge suffered as a result of the work accident was a lumbar sprain which had completely healed within eighteen months; that the work accident did not aggravate his preexisting tumor to produce his disabling symptoms; the ulcer that developed was caused by the surgery to remove the tumor; and, that there was no evidence that he suffered a herniated disc at the L5-S1 level. Mr. Fruge relies heavily on the testimony of Dr. William Foster, who examined him three years after the accident, to support his claim for benefits. However, after reviewing all the medical evidence, Dr. Foster opined that the work accident did not aggravate his tumor and that he did have neurological problems in the lower extremities before the accident.
This is simply not a case where Mr. Fruge's work accident aggravated or accelerated his preexisting spinal cord tumor, which in turn, produced disabling symptoms that he had not suffered prior to the accident. To *565 the contrary, the medical and lay testimony clearly indicates that his disabling symptoms, lower back pain and numbness in his legs and peri-anal area, were present before the work accident and were caused by his preexisting tumor. Thus, we conclude that the hearing officer was not clearly wrong in finding that his disabling symptoms were not caused by the work accident.

MEDICAL EXPENSES
La.R.S. 23:1203(A) provides, in pertinent part, that "In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal,...." Under this statute, a worker's medical expenses are compensable only if they are occasioned by the work related injury. Charles v. Aetna Cas. and Sur. Co., 525 So.2d 1272 (La.App. 3 Cir.), writ denied, 531 So.2d 480 (La.1988). The claimant must establish his claim for medical benefits and show that they are related to the work accident to a reasonable certainty and by a preponderance of the evidence. Id. Since we have found that Mr. Fruge's preexisting spinal cord tumor and ulcer were not causally related to the work accident, the hearing officer was not clearly wrong in failing to award him medical expenses for the removal of the tumor and treatment of the ulcer.

ATTORNEY'S FEES AND PENALTIES
It is well settled that a workers' compensation claimant is not entitled to attorney's fees and penalties unless the termination of benefits is found to be arbitrary, capricious or without probable cause. La. R.S. 23:1201; 1201.2. Where termination of benefits is based on competent medical reports or evidence, it is not arbitrary or capricious. Guillory v. City of Lake Charles, 614 So.2d 165 (La.App. 3 Cir.), writ denied, 616 So.2d 700 (La.1993). A hearing officer has great discretion in the award of attorney's fees and penalties, and his or her decision will not be disturbed by an appellate court unless it is clearly wrong. Dietz v. Guichard Drilling Co., 626 So.2d 79 (La.App. 3 Cir. 1993).
In the case sub judice, Linda Robinette, a senior claims representative with Commercial Union assigned to handle Mr. Fruge's claim for Gravity Drainage, testified that benefits were terminated only after she received medical reports from Drs. Litel, Raggio, and Ford, who all agreed that Mr. Fruge's only disability caused by the work accident was a lumbar sprain which had completely healed and that his disabling symptoms were the direct result of a preexisting tumor which was not causally related to the work accident. Thus, we conclude that Mr. Fruge's benefits were terminated based on competent medical reports and that the hearing officer was not clearly wrong in her denial of attorney's fees and penalties.

CONCLUSION
For the foregoing reasons, the judgment of the hearing officer is affirmed. Costs of this appeal are assessed against the plaintiff-appellant, Larry Fruge.
AFFIRMED.
NOTES
[*] Judge Lucien C. Bertrand, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.