DREW, J.
| tHeath Capíes seeks a reversal of a trial court judgment awarding custody of his minor child, K.C., now age 10, to Elizabeth Stewart (“Stewart”), the maternal grandmother. We affirm.

FACTS

Heath divorced K.C.’s mother, Alesha Capíes, in 2002. She was granted sole custody of K.C. by stipulation. The reality is that K.C. has lived with her grandmother at all times in her young life.[1]
In 2003, Heath filed a rule to change custody. The parties then entered into a stipulated judgment reaffirming custody in favor of Alesha, visitation to Heath, and including a provision that Heath take anger management classes.
Heath filed another rule for custody in December 2010, alleging a change in circumstances since the initial stipulated judgment, in that Alesha was not partici *439 pating in the rearing of the child, and was not capable of properly doing so.
Before any action was taken on the rule for custody, Stewart filed a petition for intervention in January 2011, requesting that she be appointed primary custodian. Alesha has aligned with her mother, who asserts that she provides a wholesome and stable environment for K.C.
Stewart alleges that Heath:
• has a long history of substance abuse;
• has a criminal history involving alcohol, drugs, and domestic violence;
12* has threatened suicide;
• has a poor history of providing child support, until very recently;[2] and
• has been treated with Suboxone for his drug problem for two years.[3]
Stewart’s home is the only home that K.C. has ever known. Several of KC.’s relatives testified that she would be “crushed” or “destroyed” if she did not continue to live with Stewart.
Established factors relative to Stewart include that:
• she admits having several boyfriends stay overnight on the couch;
• she went on a week-long cruise with a male friend;
• she is currently dating a doctor;
• she cleans houses for a living, earning $1,700 a month;
• she has no formal education;
• she has undergone some cosmetic surgical procedures; and
• she lied about her income in order to receive food stamps.
Stewart expressed concern about Heath Capíes’ insensitivity and cruelty to his daughter about her weight problem. Stewart also testified that when Heath and his current wife, Kendra, were separated, he told her he wanted to sign away the child’s custody so that he could avoid paying child support.
|sHeath and Stewart have had disagreements regarding the discipline of K.C. Heath does not want her to have a cell phone, a Facebook account, or to wear fake fingernails, which Stewart has provided for her. He considers himself more of a disciplinarian than Stewart. He has no objection to K.C. seeing Stewart, and understands the transfer of custody should be in phases. Heath has not been actively involved in overseeing K.C.’s education, but Stewart admits she did not put him on the list to be notified about K.C.’s school functions. If Heath is granted custody of K.C., she will have to change schools.
In our analysis of this appeal, we benefited greatly from the learned trial court’s exhaustive and incisive Ruling on a Rule for Custody, which is attached hereto as an unpublished appendix. We express our appreciation for the trial court’s dedication to the profession.

ELIZABETH STEWART’S ARGUMENTS

A. Awarding custody to either parent would result in substantial harm.

Stewart relies on La. C.C. art. 133, which states:
*440 If an award of joint custody or of sole custody to either parent would result in substantial harm to the child, the Court shall award custody to another person with whom the child has been living in a wholesome and stable environment.
In her petition for intervention, Stewart claims to provide a wholesome and stable environment in her home.
Heath relies on Jones v. Jones, 415 So.2d 300 (La.App. 2d Cir.1982), to support his argument for custody. However, Jones was decided prior to two statutory amendments to Article 133. The amendments provide that the appropriate standard is “substantial harm” to the minor child. 14Stewart has alleged and proved that parental custody to either parent would result in substantial harm to the minor child. Capíes’ extensive criminal history and substance abuse presents a substantial harm to K.C. Stewart proved that K.C. has resided with her in her home for the entirety of her life.

B. Heath has a long history of drug abuse, for which he is still being treated.

Heath admits his drug problem. His two-year usage of Suboxone, beyond the normal duration of three months, suggests that he may in fact be addicted to this drug. The trial court correctly found that Heath is still struggling with his drug habit and that until he demonstrates a significant period of sobriety, placing custody with him would result in substantial harm to the child.

C. Heath has never acted as K.C.’s full-time father.

Heath moved out of Stewart’s home when K.C. was three months old. In the initial judgment on this matter, Alesha Capíes was awarded sole custody of K.C. Heath was granted only supervised visitation pending his completion of an anger management program. The record demonstrates discrepancies between his pleadings and his testimony regarding his knowledge of Stewart’s child-rearing. This suggests his involvement in the child’s life was minimal. He has consistently displayed parental irresponsibility.

D.Stewart’s home is a stable and familiar environment for K.C.

K.C. has never known another home. She has performed well in school and has near-perfect attendance. There is no indication that Stewart’s home is not a stable and wholesome environment for K.C. She is 1 ^flourishing at her school and her church. She is doing well in extracurricular activities, such as Girl Scouts.

HEATH CAPLES’ ARGUMENTS

A. A parent enjoys the paramount right to custody under Article 133.

Heath urges that the trial court erred in not recognizing the law as to the paramount right of a parent versus a nonpar-ent in a custody situation. La. C.C. art. 133. He argues that a parent may be deprived of that custody only when there are compelling reasons, such as the parent has forfeited his right to parenthood, he is unfit, or he is unable to provide a home for the child. The burden of proving compelling reasons rests with the non-parent.
The “best interest” standard is not appropriate in this case, where custody is disputed between one parent and one non-parent. The parent always enjoys the paramount right to custody. Stewart has failed to meet the burden of substantial harm or compelling reasons for custody of the child to be awarded to her rather than to her father. No witness has testified to any specific risk of harm or clear reason that K.C. should not be transferred to the *441 custody of her father. The trial court committed manifest error in its custody award.

B. He is capable of raising K.C. and has turned his life around.

Heath is gainfully employed by DOTD, with health insurance that includes family coverage covering his present wife, his two daughters, and himself. He is happily married, and his wife supports his quest for custody of K.C. He sees himself as more of a disciplinarian than Stewart, and believes he can better provide stability, structure, education, and family life activities for her. Her education will be further emphasized by his wife, |fiKendra, who is an RN and sees education as a priority. Capíes also attends church on Sundays and Wednesdays.
Heath admits to his prior drug problem, but explains it has been over two years since he used a nonprescription drug. He quit drinking in 2005 as well. He estimates he will be off Suboxone within nine months of the trial court date. The drug does not create a buzz. He is using the Suboxone for a shoulder injury. He claims to have always paid child support, receiving help from his father at times. He denies any suicide attempts, and he also denies ever being cruel or insensitive to K.C. He owns a spacious home on three acres in Downsville, in which K.C. would be very comfortable in her living and sleeping arrangements.

TESTIMONY

Heath and Alesha Capíes married on July 14, 2001, at a young age; on December 16, 2001, K.C. was born. K.C. has lived with her maternal grandmother, Elizabeth Stewart, all of her life, including when Heath and Alesha were married and living in Stewart’s home. On March 16, 2002, Heath and Alesha separated; K.C. was only three months old at that time. Heath and Alesha were divorced on January 14, 2008. Alesha remained with Stewart temporarily after she and Heath separated. In their judgment of divorce, Heath was ordered to attend anger management classes and was given only supervised visitation with K.C. until he successfully completed this treatment. Heath later married Kendra Capíes on March 3, 2007.
When Alesha moved out of Stewart’s home, Stewart kept K.C., age 18 months, with her. Alesha visited K.C. at Stewart’s home. Heath also exercised his visitation rights at Stewart’s home, but there is some dispute in |7the record as to how often he visited. The record does not reflect why Heath waited so long to seek primary custody of K.C. Heath initially alleged that he did not know K.C. was living with Stewart, but later clarified that he became aware of it around the time of his separation and divorce proceedings with Kendra Capíes.
Stewart has encouraged K.C. to do well in school and to participate in extracurricular activities. She purchased a home within walking distance from Highland Elementary School. She has hired a tutor to help K.C. in school as needed. K.C. has been on the A/B honor roll at her school and had perfect attendance for several years. Stewart admits that she did not include Heath on K.C.’s school contact list so that he would be informed about events relevant to KC.’s education and extracurricular activities. However, Stewart has alleged that she notified Heath and Kendra about these things through text messages. K.C. has participated in Girl Scouts, sports, and music programs in her community for several years.
In addition to KC.’s formal education, she and Stewart attend Christ Church in West Monroe on Sundays and Wednesdays *442 and when there are special services. Heath and Kendra have also taken K.C. to church when she is in their custody. K.C. has received counseling from Pastor Ottis Lenoir, the Associate Pastor of Christ Church, concerning the custody arrangement and disputes. Pastor Lenoir testified that K.C. is age appropriate, well adjusted, and receiving moral and spiritual guidance from Stewart.
K.C. has built many friendships in her school, her church, and her community while living with Stewart. K.C. is also able to interact with her |sbrother and sister[4] while she is at Stewart’s home and likely would not see them as much if she primarily lived with Heath. The parties acknowledge that K.C. would be required to attend a different school if Heath received primary custody, and that this would be a significant change for her.
Though both parties have contributed to the educational and moral development of K.C., neither party is without fault. Heath has a history of substance abuse and has been ordered to attend anger management before he could exercise his visitation rights with K.C. Heath received a DWI in 2004 or 2005 and though he quit drinking afterward, he began taking Lortab without a prescription. His drug of choice was OxyContin; he consumed an 80-mg capsule each day. He then became addicted to pain medication prescribed to him for a shoulder injury, which led to his participation in a drug rehabilitation program in 2009.
In Heath’s drug rehabilitation program, he was prescribed Suboxone to wean him off opiates. At the time he testified, Heath had been taking Suboxone for approximately two years.[5] Heath has also fallen behind on his child support payments and relied on his father to make his payments for him on several occasions. Heath and Kendra have had serious marital problems in the recent past, which led to the filing of divorce proceedings.[6]
Stewart has reared K.C. in her home most of K.C.’s life, and during 19that time, she has divorced her husband of many years to raise K.C. Stewart has permitted male friends to stay overnight in her home and went on a cruise with a male friend for one week. Stewart’s home was broken into by a male friend of hers who stole from her, but she claimed that he never stayed over at her house. She provided K.C. with a cellular phone when she asked for one. She allowed her to have a Face-book page though K.C. was not old enough to have one and lied about her age in order to create the page. Stewart has purchased fake fingernails for K.C. even though she was not yet 10 years old and Heath disapproved of it. Stewart also knew that Heath disapproved of the Face-book page and the cellular phone and still allowed K.C. to have these things. Stewart did lie about her income to receive government aid.

ANALYSIS

Appellant’s assignment of error alleges that the trial court erred in not awarding custody of the minor child to the father.
Louisiana Civil Code requires that “the best interest of the child [be] the *443 guiding principle in all child custody litigation.” Street v. May, 35,589 (La.App.2d Cir.12/5/01), 803 So.2d 312; Mills v. Wilkerson, 34,694 (La.App.2d Cir.3/26/01), 785 So.2d 69, 73; La. C.C. art. 131. Determining the best interest of a child is a fact-intensive inquiry requiring a court to balance the factors supporting or opposing an award of custody to the litigating parties based on the evidence presented. Street v. May, supra; Warlick v. Warlick, 27,389 (La.App.2d Cir.9/29/95), 661 So.2d 706. A court must consider all relevant factors in determining the best interest of the child and is provided with guiding factors to assist in its consideration; however, the hnlist is not exhaustive. La. C.C. art. 134. Turner v. Turner, 84-0557 (La.1984), 455 So.2d 1374.
The trial court is in the best position to determine the best interest of the child, and findings of fact in custody disputes will not be set aside on appeal unless they are manifestly erroneous or clearly wrong. Street v. May, supra. A reviewing court should adopt the trial court’s findings as its own in the absence of clear error, even if other conclusions from the same evidence were equally reasonable. Blackshire v. Washington, 39,028 (La.App.2d Cir.8/18/04), 880 So.2d 988. A trial court’s evaluation of the probative value of evidence is accorded great weight and will not be disturbed absent a clear abuse of discretion. Mills v. Wilkerson, supra; Hargrove v. Hargrove, 29,590 (La.App.2d Cir.5/9/97), 694 So.2d 645, writ denied, 97-1853 (La.10/31/97), 703 So.2d 24.
Where an award of joint or sole custody to either parent would result in substantial harm to the child, the court shall award custody to another person with whom the child has been living in a wholesome and stable environment or otherwise to any other person who is able to provide an adequate and stable environment for the child. La. C.C. art. 133.
In custody disputes between a parent and a nonparent, the parent enjoys the paramount right to custody and may be deprived of this right only for compelling reasons. Street v. May, supra; Mills v. Wilkerson, supra. In a subsequent hearing between a parent and a nonparent to modify a nonconsidered decree, the non-parent bears the burden of proof and must show that an award of custody to the parent would result in substantial harm. Tennessee v. Campbell, 28,823 (La.App.2d Cir.10/30/96), 682 So.2d 1274; Bracy v. Bracy, 32,841 (La.App.2d Cir.10/27/99), 743 So.2d 930. This record amply demonstrates that substantial harm would occur if the child is removed from her grandmother’s home.
Substantial harm under art. 133 includes parental unfitness, neglect, abuse, abandonment of rights, and is broad enough to include “any other circumstances, such as prolonged separation of the child from its natural parents, that would cause the child to suffer substantial harm.” Mills v. Wilkerson, supra; Hughes v. McKenzie, 20,322 (La.App.2d Cir.2/22/89), 539 So.2d 965.
Heath’s argument that a parent enjoys a paramount right to custody of his child against a nonparent and that he may be deprived of that custody only for compelling reasons is correct, but on its own does not demonstrate the trial court erred in making its custody determination. The trial court found that K.C. has lived most of her life in the home of Stewart and that K.C. would be substantially harmed if her father were given domiciliary custody of her. These conclusions were supported by the testimony of three witnesses who have known K.C. for most of her life. The trial court is in a better position to evaluate testimony and evidence and though other *444 equally reasonable conclusions could be made by the evidence, that alone is not sufficient to reverse the trial court’s conclusions. Blackshire v. Washington, supra.
The trial court also found that Heath has been inconsistent as a father financially, a finding supported by the trial record and within the meaning of substantial harm under art. 133; this finding clearly supports the trial court’s conclusion. Mills v. Wilkerson, supra.
|12Though Heath has made progress in recent years, the trial court was not convinced that he is fit to raise K.C. The trial court found that Heath was still struggling with his drug habit as shown by his continued use of Suboxone to block his craving for illegal drugs. The trial court also found that until Heath is completely off drugs and has a period of sobriety, it would not be in the best interest of K.C. for Heath to have custody of her. The record shows that Heath has a history of drug and anger problems, some of which occurred shortly before the trial. While it might be possible to reach other conclusions about K.C.’s best interest or whether Heath’s custody of her would cause her substantial harm, we see no error in the trial court’s conclusion. Blackshire v. Washington, supra.
Heath has made numerous attacks on Stewart’s ability to raise K.C. He alleged that he would be able to provide more stability and structure in her life and reinforce education better than Stewart would. The trial court found that K.C. spent most of her life with Stewart and that she was well adjusted for her age. At trial, both parties acknowledged that a sudden change in K.C.’s custody arrangement would be detrimental because she has been living with Stewart for most of her life. Stewart and K.C. attend church often, participate in church activities, and have relationships within their church. This suggests that K.C. has the stability and structure she needs in her life, factors that clearly militate in favor of the grandmother, in determining the child’s best interest. La. C.C. art. 134(2), (3), (6).
The record also indicated that K.C. was receiving the education she needs while in Stewart’s custody. K.C. has made the A/B honor roll several years in a row and had perfect attendance at school except for the year this | ^litigation began. Though Kendra Capíes has a college degree and Stewart does not, there is nothing to show KC.’s educational needs are not being met, or that she would not learn to be financially independent.
Heath also attacked Stewart’s ability to rear K.C. because her boyfriends and male visitors that have stayed at her house overnight. Stewart admits that this has happened, but only when K.C. was not at home. Stewart also admitted that she went on a cruise with a male friend, but it was only as friends. Heath’s argument suggests that Stewart might be living in open concubinage; however, no evidence was offered to prove this claim. Even in circumstances where a party has been living in open concubinage in the presence of a child, the opposing party must show that the living arrangement has had an adverse effect upon the child. Stephenson v. Stephenson, 81-1459 (La.1981), 404 So.2d 963. Not only has Heath not proven that Stewart was or is living in open concubinage, he has not proven that it has had an adverse effect on K.C. Heath’s references to Stewart’s beauty enhancement surgeries also fail to show in any way that she is unable to handle the child’s upbringing.
Heath has claimed that he would be able to provide a better life for K.C. because of his household income. He is employed with the Department of Transportation and Development with a good salary and *445 benefits, and Kendra is a nurse with a stable income also. However, income alone does not mean that a person is a fit parent. The record shows that Heath has not always been gainfully employed or always paid his child support on time; both of these factors suggest that Heath has not always taken his job as a provider seriously. Though Kendra and Heath claim that |,4he has improved, the trial court was not convinced. It noted that Stewart has always provided for the child and created a loving environment for her. Though her income is not as high as Heath and Kendra’s, there is nothing in the record to suggest that K.C. has been forced to do without while she has lived with Stewart.
The trial court concluded that if Heath Capíes were given primary custody of K.C., it would cause substantial harm to the child. That conclusion is amply supported by the record. Though other conclusions could possibly be reached on the facts found by the trial court, the judgment below is quite clearly not an abuse of discretion.
DECREE
With all costs of this appeal being taxed against the appellant, the ruling of the trial court is AFFIRMED.

. The longest K.C. has ever been continuously outside of Stewart’s home is one week.

. In April 2011, Heath paid accrued child support arrearage dating back to November 2010. He paid three months of accrued child support on August 2, 2011, just days prior to the first day of the trial in this matter.

. He claims that he will be off the drug entirely within nine months. Suboxone was prescribed for him by an addictionologist. It is a narcotic drug prescribed to assist those who need help in stepping down from other narcotic drugs. The normal duration is up to three months and, if used longer, the patient may become dependent upon Suboxone. He has passed drug screens in connection with his work, though he does have one DWI, dating from 2005.

. Alesha Capíes had two other children by another man; they both live with Hazel Ligh-tle, Stewart’s sister, who lives in close proximity to Stewart.

. Though Heath was prescribed this medication, Dr. Figueroa, Stewart's fiance, testified that typically patients are prescribed Su-boxone for approximately 7-10 days, or in some cases, three months.

.The parties reconciled before a rule for custody was heard.