Judgment rendered October 2, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,012-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

DAWSON JETTON                                    Plaintiff-Appellee

versus

TIERNY JETTON                                    Defendant-Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 612,873

Honorable Katherine Clark Dorroh, Judge

* * * * *

SMITHERMAN, HILL & BRICE, L.C.            Counsel for Appellant
By: F. Weber Hill

LOBRANO LAW FIRM, LLC                     Counsel for Intervenor-
By: Lisa D. Lobrano                       Appellee,
                                          Marissa Webb

NICKELSON LAW PLLC                        Counsel for Intervenor-
By: Heidi Kemple Martin                   Appellee,
                                          Kaitlyn Windham

CARMOUCHE, BOKENFOHR,
BUCKLE & DAY
By: Amy Gardner Day

* * * * *

Before COX, STEPHENS, and THOMPSON, JJ.

**STEPHENS, J.**

This appeal arises out of a custody judgment rendered in the First Judicial District for the Parish of Caddo, State of Louisiana, by the Honorable Katherine C. Dorroh, Judge, presiding. The child's biological mother has appealed from the district court's award of sole custody to the father's former fiancée, a nonparent, the person with whom the child has been living. For the reasons set forth below, we affirm the trial court's judgment.

## FACTS AND PROCEDURAL HISTORY

Dawson and Tierny Jetton are the biological parents of E.J. (d.o.b. 10/27/16). Dawson and Tierny married on November 25, 2017, physically separated on February 1, 2018, and on November 20, 2018, a petition for divorce was filed by Mr. Jetton in the First Judicial District Court.

Prior to the parties' divorce action, however, a child-in-need-of-care ("CINC") case, Docket No. 159,637, was instituted in the Caddo Parish Juvenile Court. On August 18, 2018, the Department of Children and Family Services ("DCFS") received a complaint concerning injuries to E.J. that occurred when she was left alone with Ms. Jetton's boyfriend, Patrick Ingram, by Ms. Jetton when she went to work. Also in Ingram's care at that time were his two daughters (aged two and three). While E.J. was with Ingram that day, she sustained bruising to her face, upper arm, and both biceps areas. Ingram claimed that his daughters caused the injuries, but medical personnel determined that the injuries were caused by blunt force, not by children.

On September 13, 2018, Ingram was arrested for one count of cruelty to a juvenile. On September 14, 2018, E.J. was placed in the custody of the

State of Louisiana as a child in need of care. A final disposition hearing was held in December of 2018, and E.J. was placed in the joint custody of her parents, with Ms. Jetton designated as domiciliary parent. The divorce action then proceeded in the district court.

On January 8, 2019, a hearing was held before Judge Waddell. The parties agreed to an interim order without prejudice, and the parents were awarded joint custody of E.J., with Ms. Jetton being designated domiciliary parent, and Mr. Jetton having physical custody every other weekend. In late March-early April of 2020, both parties filed petitions for protection from abuse. Ms. Jetton claimed that E.J. disclosed that her father had touched her inappropriately, and Mr. Jetton claimed that the mother's boyfriend, Richard Jones, had inappropriately touched the child's private parts. On April 9, 2020, the district court dismissed both protective orders. Another CINC case was started in the juvenile court based on the allegations against Jones.

On May 19, 2020, Ms. Jetton filed a rule for contempt, claiming that Mr. Jetton withheld custody of E.J. for 22 days, in violation of the district court's January 8, 2019, interim order. On July 15, 2020, a hearing was held, and the district court granted the parties a divorce and modified the first interim order for custody. On July 21, 2020, the district court signed an interim order appointing Sandi Davis to evaluate the parties and the child. The district court further ordered that the parties share custody, with each parent to have alternating weeks with the child. The July 21, 2020, judgment, however, did not contain any language about the divorce. As a result, there was no actual judgment of divorce filed into the suit record.[1]

_____

[1] On March 1, 2023, the current district judge signed a judgment of divorce and filed it into the record.

On April 1, 2021, Ms. Jetton filed a motion for protective order in juvenile court, requesting that she be granted sole custody of E.J. or that E.J. be placed in the custody of the State. The motion for protective order was denied, and the matter was referred to the juvenile judge, as there was an open CINC case pending. After a hearing on the motion, which was treated as a motion to modify disposition, on May 26, 2021, Judge Matlock rendered a judgment modifying disposition in Docket Number 159,637-A awarding the sole custody, care, and control of E.J. to Marissa Webb, E.J.'s paternal grandmother. The judgment further gave Ms. Webb sole discretion as to visitation for either parent.[2] Ms. Jetton, with the help of a court-appointed curator, appealed this judgment to this Court.[3] On December 15, 2021, the Second Circuit vacated the juvenile court's judgment modifying disposition and ordered the trial court's previous 50/50 custody arrangement reinstated. *State in Interest of E.J.*, 54,332 (La. App. 2 Cir. 12/15/21), 331 So. 3d 1096.

On June 10, 2022, Ms. Jetton filed a petition for relocation with E.J. to Georgia and for modification of custody in the district court. Mr. Jetton filed an answer to the petition requesting relocation and modification of custody and a reconventional demand requesting an award of sole custody of E.J. on August 4, 2022.

---

[2] Ms. Webb also filed a petition for intervention and for custody in the district court on August 20, 2021. She referenced the juvenile court's judgment in her favor and noted that the juvenile judge ruled that the judgment of modifying disposition would be subject to any future court orders from "a court of competent jurisdiction."

[3] At some point while these proceedings were ongoing, Mr. Jetton relocated to west Texas for work, and Ms. Jetton moved to east Texas with another man with whom she had a second child. Ms. Jetton then moved to Georgia, where she and her younger child reside with her adoptive mother.

On September 15, 2022, Ms. Webb filed a petition to intervene, requesting that she be given custody of E.J. pursuant to La. C.C. art. 133, with visitation rights for both Mr. and Ms. Jetton. All parties appeared before the district court on October 17, 2022, and the matter was tried on February 27, 28, and March 1, 2023. During the trial, the judge learned that physical custody of E.J. was being shared, with Tierny Jetton's maternal grandmother, Elaine Owen, having E.J. 50%, and Dawson Jetton's former fiancée, Kaitlyn Windham, having E.J. 50% of the time.

After the trial and before a ruling could be made, on April 25, 2023, Ms. Windham filed a petition for protection from abuse on behalf of E.J. under La. R.S. 46:2131, *et seq*. The petition alleged that Mr. Jetton had checked E.J. out of school on April 24, 2023, without Ms. Windham's knowledge or consent, and that night, E.J. disclosed to Ms. Windham that her father had sexually abused her. Soon thereafter, another CINC case was initiated in juvenile court, still under Docket No. 159,637. DCFS removed E.J. from Ms. Windham's care and placed her in the care and custody of Elaine Owen, Ms. Jetton's maternal grandmother, and home studies were ordered. Ms. Jetton filed an answer, expressing her opposition to Ms. Windham's petition to intervene on May 19, 2023.

A hearing was held on May 24, 2023, on the motion to intervene filed by Ms. Windham. The district court granted the motion, then deferred any hearing because of the pending CINC case in juvenile court. On that same date, Judge Paul Young of the juvenile court ordered DCFS to expedite the home studies, with E.J. to remain in the custody of the State and her placement to continue with Ms. Owen.

On June 28, 2023, DCFS denied the home study for Ms. Windham, and a hearing in juvenile court was held before *ad hoc* Judge Don Weir. After a pretrial conference between Judge Weir and all parties, and a telephone conference with the district court judge, the juvenile court rendered an order awarding temporary custody of E.J. to Ms. Windham, relieving the caseworkers for DCFS and CASA, granting Ms. Jetton supervised visitation, issuing a protective order against Mr. Jetton, and relinquishing jurisdiction *vis-à-vis* custody to the district court. On that same day, counsel for Ms. Jetton filed a motion to reopen the case for the taking of additional testimony "from CASA and DCFS representatives, who have additional information pertinent to this matter regarding their findings and the best interest of the minor child, who were never afforded an opportunity to present said evidence and/or testimony to this Court and to adequately question Kaitlyn Windham." An opposition to this motion was filed by counsel for Ms. Windham on August 21, 2023.

The matter was heard on August 24, 2023. After the district court denied Ms. Jetton's motion to reopen the case for additional testimony, it took the matter under advisement. The following is excerpted from district court's ruling:

> It is clear to the Court that it is in the best interest of the minor child that the child continue to live with Kaitlyn Windham, and she is hereby granted sole custody of the minor child. Tierny Jetton shall have reasonable and frequent supervised periods of physical custody with the minor child to be agreed upon by Kaitlyn Windham and supervised by Elaine Owen. Dawson Jetton shall continue to have no contact with the minor child until such time that the investigation of the allegations of sexual abuse has cleared Mr. Jetton of any wrongdoing. Marissa Webb shall also be granted reasonable and frequent unsupervised periods of physical custody with the minor child, to be agreed upon by Kaitlyn Windham. The Court orders the parties to establish reasonable times that the mother can Facetime with

5

the minor child during the time she is not present in Louisiana. There is no doubt that Ms. Jetton loves the minor child, and that the child loves Ms. Jetton. The Court is convinced, however, that Ms. Jetton is not capable emotionally to care for the minor child on a daily basis. Her own past history of abuse, her anxiety, her use of medical marijuana to deal with her past issues and anxiety, and her poor judgment, prevent her from taking care of this child in the manner in which this child deserves.

It is from this adverse judgment that Ms. Jetton has appealed.

**DISCUSSION**

*Assignments of Error Nos. 1 and 2*

According to Ms. Jetton, based on the testimony at trial, there was no evidence that substantial harm would result ***in the future*** to E.J. In fact, the evidence shows just the opposite; Ms. Jetton would be able to provide a loving, caring, and stable environment for her child. Ms. Jetton argues that the district court applied the incorrect standard by reviewing the past history of both parents rather than looking at their current and future status. Furthermore, it was shown through testimony and proceedings that Ms. Jetton is doing everything in her power to protect and care for her minor child.

Ms. Windham, on the other hand, points out that the burden of proving that an award of custody to Ms. Jetton would cause substantial harm to E.J. was initially placed upon Marissa Webb as a nonparent intervenor in this matter. Following her intervention, the same burden of proof was placed upon Ms. Windham.

Ms. Jetton's argument is that the district court applied an incorrect standard to find "substantial harm" by reviewing the past history of both parents rather than focusing on the current and future status of the parents. Ms. Jetton takes issue with the district court's use of past behavior as

evidence that substantial harm would come to E.J. in the future if custody were awarded to Ms. Jetton. According to Ms. Windham, it is evident from the record that the district court properly considered both Ms. Jetton's past and present behavior in determining that future substantial harm would come to E.J. if Ms. Jetton were awarded custody.

Ms. Windham urges that *Caples v. Caples,* 47,491 (La. App. 2 Cir. 7/25/12), 103 So. 3d 437, is an analogous case. In *Caples*, this Court affirmed a judgment awarding custody of a minor child to the maternal grandmother over the objections of the child's biological father. The father argued that, despite his history of drug abuse and limited involvement in the child's life, he had turned his life around and could provide a stable environment for the child. *Id.*, 47,491 at p. 5, 103 So. 3d at 441. The evidence showed that the child had lived with her grandmother for most of her life, she was receiving a good education and participated in extracurricular activities, the father's financial and emotional support had been inconsistent, and the father continued to struggle with drug addiction. *Id.*, 47,491 at pp. 12-13, 103 So. 3d at 444-45. The trial court found that the child would be substantially harmed if her father were given custody, and this Court found the lower court's conclusions to be "amply supported by the record." *Id.*, 47,491 at p. 14, 103 So. 3d at 445.

Ms. Windham urges that, as in *Caples*, *supra*, the evidence presented in the instant case at trial and relied upon by the district court in its written reasons for judgment, clearly shows that an award of custody to Tierny Jetton "would result in substantial harm to the child."

The best interest of the child is the paramount goal in all custody determinations in Louisiana, including disputes between a biological parent and a nonparent. La. C.C. art. 131; *Cook v. Sullivan*, 20-01471 (La. 9/30/21), 330 So. 3d 152; *Tracie F. v. Francisco D.*, 15-1812 (La. 3/15/16), 188 So. 3d 231; *Evans v. Lungrin*, 97-0541 (La. 2/6/98), 708 So. 2d 731. Every child custody case must be viewed in light of its own particular set of facts and circumstances, with the paramount consideration being the best interest of the child. *Cook*, *supra*; *Neathery v. Neathery*, 51,388 (La. App. 2 Cir. 2/17/17), 216 So. 3d 251.

The trial court has great discretion in matters of child custody and domestic abuse, and its determination will not be disturbed in the absence of a clear abuse of discretion. *Cook*, *supra*; *Wilson v. Brown*, 54,699 (La. App. 2 Cir. 8/10/22), 345 So. 3d 513. The trial court is in the best position to determine the best interest of the child, and findings of fact in custody disputes will not be set aside on appeal unless they are manifestly erroneous or clearly wrong. *Neatherly*, *supra*; *Caples*, *supra*; *Street v. May*, 35,589 (La. App. 2 Cir. 12/5/01), 803 So. 2d 312.

A reviewing court should adopt the trial court's findings as its own in the absence of clear error, even if other conclusions from the same evidence may be equally reasonable. *Caples*, *supra*; *Blackshire v. Washington*, 39,028 (La. App. 2 Cir. 8/18/04), 880 So. 2d 988. A trial court's evaluation of the probative value of evidence is accorded great weight and will not be disturbed absent a clear abuse of discretion. *Caples*, *supra*.

La. C.C. art. 133, which governs custody disputes between a parent and a nonparent, provides that if an award of joint custody or of sole custody to either parent would result in substantial harm to the child, the court shall

8

award custody to another person with whom the child has been living in a wholesome and stable environment, or otherwise to any other person able to provide an adequate and stable environment.

"Substantial harm" has been defined to include parental unfitness, neglect, abuse, abandonment of rights, and a prolonged separation of the child from her natural parents. *Cook,* 20-01471 at p. 7, 330 So. 3d at 157. The nonparent has the burden of proving by clear and convincing evidence that an award of sole or joint custody to the parent would result in substantial harm to the minor child. *Id.,* 20-01471 at p. 8, 330 So. 3d at 158. If the first prong of La. C.C. art. 133 is met, the district court then must award "custody to another person with whom the child has been living in a wholesome and stable environment, or otherwise to any other person able to provide an adequate and stable environment." *Id.*

La. C.C. art. 134 provides that a court "shall consider all relevant factors," including the 14 enumerated factors, "in determining the best interest of the child." A court must consider all relevant factors in determining the best interest of the child and is provided with guiding factors to assist in its consideration; however, the list is not exhaustive or exclusive. La. C.C. art. 134, cmt. (b); *Neathery*, *supra*.

As evidenced by the lengthy written reasons for judgment, the district court fully "considered all of the factors of Civil Code Article 134," apparently finding factors (5) and (14) to be the most applicable in this case. Those factors are as follows:

> (5) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
>
> . . . .

9

(14) The responsibility for the care and rearing of the child previously exercised by each party.

The trial evidence showed that E.J. lived with Kaitlyn Windham 50% of the time beginning in late December of 2021 and continuing until and through the trial. Ms. Windham testified that she and Elaine Owen, Ms. Jetton's grandmother, were the primary caregivers of E.J. during that time. While with Ms. Windham, E.J. lived in a home with her and E.J.'s two half-siblings (the children of Ms. Windham and Dawson Jetton). Ms. Windham testified that her home has three bedrooms and two bathrooms and that E.J. shares her bedroom with her younger half-sister. Ms. Windham was the caregiver who enrolled E.J. in school, helped her get ready to go to school, and met her for the school bus drop-off and pick-up daily. Ms. Windham enrolled and paid for E.J.'s extracurricular activities, including tumbling and pageants. Ms. Windham takes E.J. to church weekly where she was recently dedicated to the Christian faith with her half-brother and half-sister.

During the trial, Ms. Jetton admitted that she did not exercise her shared custody rights because she did not have anywhere to live in Louisiana. Because Ms. Windham had been the primary caregiver of E.J. for at least two years at the time of trial, and remains her primary caregiver, factors (5) and (14) weigh in favor of the district court's award of custody to Ms. Windham.

Also relevant in this case, urges Ms. Windham, and obviously considered by the district court, are factors (1), (9), and (10). La. C.C. art. 134(A)(1) requires that the court consider "[t]he potential for the child to be abused, as defined by Children's Code Article 603, which shall be the primary consideration." In that part of the trial court's written reasons

10

addressing the first part of La. C.C. art. 133, the court specifically found that the evidence established that Ms. Jetton placed E.J. into the care of at least two men who physically and sexually abused her. Further, Ms. Jetton as well as her mother continue to deny that these men abused E.J. When E.J. disclosed the most recent allegations of abuse, it was to Ms. Windham. She immediately contacted 911, took E.J. to the Emergency Room, and filed a petition for protection from abuse on behalf of the child. Because Ms. Jetton has previously placed E.J. in the care of men who committed both physical and sexual abuse and continues to deny that any such abuse occurred, there remains the strong likelihood that E.J. would sustain additional abuse if placed in the custody of her mother.

La. C.C. art. 134(A)(9) provides for the consideration of "[t]he mental and physical health of each party." Evidence revealed that Ms. Jetton has had significant mental health issues throughout E.J.'s life and is presently prescribed medication for the treatment of depression. She is also prescribed medical marijuana for problems with sleeping, eating, worrying, sadness, depression, and anxiety. Ms. Jetton testified that she previously had suicidal ideations. Ms. Webb testified that Ms. Jetton checked herself into Riverdale Behavioral Hospital in Texarkana because she had thoughts of harming E.J. in January of 2018. Finally, as noted in the written reasons for judgment, the district court stated that Ms. Jetton "lack[s] judgment" and is "more interested in planting lies in her child's mind, than caring for her child." Factor (9) weighs heavily in favor of Ms. Windham, who has no mental or significant physical health issues.

Finally, La. C.C. art. 134(A)(10) provides for the consideration of "[t]he home, school, and community history of the child." Ms. Windham

11

enrolled E.J. in school in Mooringsport where E.J. has many friends. She paid for E.J.'s extracurricular activities, including tumbling and pageants. The evidence showed that E.J. had a long history of residing with Ms. Windham, where she was established in a home, school, and community. Ms. Jetton admitted that she did not exercise her shared custody because she was not able to provide a home for E.J. in Louisiana.

We cannot say that the district court abused its discretion in finding that the evidence presented at trial established that an award of custody to Ms. Jetton "would result in substantial harm to [E.J.]," or that Ms. Windham was a "person with whom [E.J.] has been living in a wholesome and stable environment" within the intendment of La. C.C. art. 133. We likewise do not find the district court's determination that the evidence showed that consideration of the factors enumerated in La. C.C. art. 134 weighed in favor of Kaitlyn Windham to be manifestly erroneous or clearly wrong. We thus affirm the district court's judgment denying Ms. Jetton's motion to relocate and awarding sole custody of E.J. to Ms. Windham, with periods of supervised visitation with Ms. Jetton and periods of unsupervised visitation with Ms. Webb.

### Assignment of Error No. 3

Ms. Jetton's third assignment of error is that the trial court erred in allowing Ms. Windham to file a motion to intervene in these proceedings after the three-day trial had concluded. Prior to the intervention, there were no allegations to give notice to Ms. Jetton that Ms. Windham would be asking for custody of E.J. Therefore, Ms. Jetton was not prepared to argue against or object to an award of custody to Ms. Windham at the time of trial.

12

Ms. Jetton concedes that parties may be allowed to intervene at any time in a pending action in accordance with La. C.C.P. art. 1091. However, Ms. Windham was allowed to intervene after the trial was concluded, and all that was left was simply the court's issuance of pending written reasons—there was no further testimony allowed regarding the issue of custody vis-à-vis Ms. Windham, a potential custodial nonparent.

Ms. Windham argues that, as E.J.'s primary caretaker at the time of trial, *see* La. C.C. art. 133, she clearly had an interest or justiciable right in the pending action as required by La. C.C.P. art. 1091. At the May 24, 2023, hearing, there was no evidence presented to suggest that the progress of the principal action would be delayed by her intervention, especially since her request for custody was based solely upon the previously taken trial testimony. Ms. Windham notes that she did not need to put on evidence of the substantial harm required under La. C.C. art. 133 because intervenor Marissa Webb had already presented such evidence to the district court. This allowed Ms. Windham to intervene without offering additional testimony, thereby not delaying the progress of the principal action.

An intervention is an incidental demand in a principal action in which a third person having an interest may intervene in the pending principal action to enforce a right related to or connected with the object of the principal action. La. C.C.P. arts. 1031, 1091; *Massey v. Decca Drilling Co., Inc.*, 25,973, (La. App. 2 Cir. 12/7/94), 647 So. 2d 1196, *writs denied*, 95-0069, 95-0411, 95-0417 (La. 4/21/95), 647 So. 2d 563, 564. Interventions sought after the filing of the answer to the principal demand, but before a final judgment is rendered on the merits, may be filed with leave of court if such intervention "will not retard the progress of the principal action." La.

C.C.P. art. 1033; *Morton v. Wal-Mart Stores, Inc.*, 36,398, p. 9 (La. App. 2 Cir. 10/25/02), 830 So. 2d 533, 540, *writ denied*, 02-2814 (La. 2/4/03), 836 So. 2d 101. The court must also consider the possible prejudice to the parties. *Id.*; *Volume Shoe Corp. v. Armato*, 341 So. 2d 611 (La. App. 2 Cir. 1977).

As noted above, the district court had the authority and discretion to permit Ms. Windham's intervention as long as it would not delay the progress of the principal action. We find no abuse of the district court's discretion in this case. Ms. Windham's intervention caused no delay in this case—although the matter had been submitted, no additional testimony was sought to be introduced, by Ms. Windham *or Ms. Jetton* at the time the intervention and objection thereto were filed.[4] There is no merit to Ms. Jetton's argument that, because of the timing of the intervention she was "not in a position to argue [against] or object to an award custody [to] Kaitlyn Windham at the time of trial." Furthermore, as noted by the district court, custody of E.J. could have been awarded to Ms. Windham, as someone with whom E.J. had been living for a sustained period of time in a "wholesome and stable environment," whether or not she intervened in this matter.

***Argument on Assignment of Error No. 4***

In her final assignment of error, Ms. Jetton urges that the district court erred in failing/refusing to allow her to admit testimony as to the character and fitness on the issue of Ms. Windham as a nonparent custodian. On July 28, 2023, Ms. Jetton filed a motion to reopen the case for the taking of

---

[4] Ms. Jetton did file a motion to reopen testimony, but it was not filed at the same time as her opposition to the petition for intervention.

additional testimony on the issue of the sexual abuse of E.J. by her father, Dawson Jetton, which was alleged to have occurred on April 24, 2023.  Ms. Jetton contends that testimony regarding this incident was necessary for the determination of E.J.'s best interests because the incident occurred at the home of Kaitlyn Windham, a party seeking custody in this matter.

Ms. Windham points out that the additional testimony sought to be introduced by Ms. Jetton regards an incident ***that occurred after the completion of the trial***.  This testimony was not necessary or appropriate, urges Ms. Windham, and the district court properly denied Ms. Jetton's motion to reopen the case for the taking of this additional testimony.

The district court denied the motion to reopen, and counsel for Ms. Jetton noted his objection for the record but did not attempt to make any proffer of evidence.  Because Ms. Jetton failed to submit a proffer of the evidence excluded by the district court, Ms. Windham contends that it is not available for appellate review by this Court, and the district court's evidentiary ruling should not be reviewed.

A district court is afforded great discretion concerning the admission of evidence at trial, and its decision to admit or exclude evidence may not be reversed on appeal absent an abuse of that discretion.  *Medine v. Roniger*, 03-3436 (La. 7/2/04), 879 So. 2d 706; *Dodson v. Master Lube Express Inc.*, 54,805 (La. App. 2 Cir. 11/16/22), 352 So. 3d 113; *Won Suk Lee v. Holyfield Construction, Inc.*, 47,204 (La. App. 2 Cir. 6/20/12), 93 So. 3d 868.  On appeal, the court must consider whether the contested ruling was erroneous, and whether the error affected a substantial right of the party.  La. C.E. art. 103(A); *Dodson, supra*; *Won Suk Lee, supra*.  If not, reversal is not

warranted.  *Id.*; *Berry v. Anco Insulations*, 52,671 (La. App. 2 Cir. 5/22/19), 273 So. 3d 595.

During the three-day trial, testimony was taken regarding the amount of time E.J. was in the physical custody of Ms. Windham and the care provided to E.J. by Ms. Windham.  Ms. Jetton sought to reopen the matter to introduce additional testimony regarding the allegations against Dawson Jetton because it occurred during Ms. Windham's alleged supervision of E.J.  Specifically, Ms. Jetton sought to introduce the testimony of DCFS and/or CASA representatives.  Ms. Jetton's opinion as to what the DCFS or CASA representatives would testify to was based on the fact that "[t]hey did a home study and her home … was denied for [E.J.] being a possible placement with Ms. Windham."

In denying Ms. Jetton's motion to reopen, the district court stated that it had "heard extensive testimony about where this child has been living and who she's been with, and I think that's what relevant, not what DCFS thinks."  The district court noted that any DCFS opinion would not be complete because DCFS had been relieved by the juvenile court prior to the completion of its investigation, and no report was ever compiled.  Furthermore, court-ordered home studies had not been conducted with regard to Ms. Jetton or Elaine Owen.  As such, the district court found that the testimony of DCFS and/or CASA representatives, based upon an admittedly incomplete investigation, was simply not relevant or proper in a determination as to the best interests of E.J.

The district court was aware and took notice of the new allegations against Mr. Jetton.  In its written reasons for judgment, the district court specifically noted that E.J. "has again made allegations that her father

16

sexually abused her, and that investigation is pending [in juvenile court] as of the writing of this opinion." During the hearing on Ms. Jetton's motion, the district court further observed that a protective order that Mr. Jetton have no contact with E.J. was in place. Finding ample support for the district court's determination to exclude evidence of the post-hearing allegations against Mr. Jetton currently pending in another venue, this Court cannot say that there was an abuse of the district court's vast discretion.

## CONCLUSION

For the reasons set forth above, the judgment of the district court awarding sole custody of E.J. to intervenor-appellee, Kaitlyn Windham, is affirmed. Costs of this appeal are assessed to defendant-appellant, Tierny Jetton.

**AFFIRMED**.